# H. W. PITKIN *v.* ROUSSEAU & JEAUFREAU, and DYAS POWER, Warrantor.

The action for delivery of merchandise, or other effects, shipped on board any kind of vessels, is prescribed by one year.

This prescription begins to run from the day of the arrival of the vessel, or that on which she ought to have arrived.

The party pleading this prescription should show that the vessel either did, or ought to have arrived one year before the suit was brought—an omission to do which is fatal to his plea.

Art. 3212 C. C., fixing the time at which a ship is considered to have made a voyage, refers alone to the privileges, given by the Articles which precede it, to creditors upon a ship, and does not govern the time when a shipper may bring an ordinary action (asking no privilege) for the delivery of goods.

APPEAL from the Fourth District Court of New Orleans, *Price, J.*
*Waples & Eustis,* for plaintiff and appellant. *Clarke & Bayne, Lacy & Upton,* and *R. Woolridge,* for defendants.

MERRICK, C. J. In this case, Hon. C. Voorhies having recused himself, on account of relationship to some of the parties, and the other members of the court having been equally divided in opinion, the Hon. P. N. Morgan, Judge of the Second District Court, was requested to sit, in this case, in the place of Mr. Justice Voorhies, under the 70th Article of the Constitution. And now, this day said P. N. Morgan having taken his seat in pursuance of said previous request, and after having had this case under advisement, the following opinion and decree were pronounced.

MORGAN, J. The steamer Echo, through her proper officers, agreed, for a certain consideration, to transport some property of the plaintiffs to a place called

Doaksville, which is in that portion of this country known as the Choctaw Nation. The bill of lading which witnesses this contract gave to the carrier the right to store and re-ship, in case the Echo could not reach Doaksville.

The goods were never delivered to the consignees at Doaksville, and this action is instituted for the purpose of recovering from the carrier their value, which the testimony fixes at $400.

The defence is :

1st.    Prescription of one year.

2d.    Denial of ownership.

The District Judge being of opinion, that inasmuch as more than one year had elapsed from the time the Echo ought to have arrived at Doaksville before the petition was filed, that the prescription commenced to run from the time when the vessel ought to have arrived, according to Art. 3502 C. C., that a vessel is considered to have made a voyage when her departure from one port and her arrival at another shall have taken place, or when, without having arrived at another port, more than sixty days have elapsed between her departure and return to the same port, according to Art. 3212 of the Civil Code, sustained the plea of prescription, and gave judgment in favor of the defendants.

The plaintiffs have appealed.

The facts upon which the plea of prescription is pleaded, are unquestionable. The goods were shipped on the 12th of June, 1854. This suit was not instituted until November, 1856. A period, then, of more than one year had elapsed, (allowing sixty days as the time in which a voyage ought to be completed by a vessel leaving this port for Doaksville,) from the time the goods were shipped to the time when the suit was brought.

The Articles of the Code relied upon by the appellees, are as follows :

Arts. 3501, 3502.    " The action for the delivery of merchandise or other effects, shipped on board any kind of vessel, is prescribed by one year from the day of the arrival of the vessel, or that on which she ought to have arrived."

Art. 3212.    " A ship is considered to have made a voyage, when her departure from one port and arrival at another shall have taken place, or when, without having arrived at another, more than sixty days have elapsed between the departure and return to the same port, or when the ship, having departed on a long voyage, has been out more than sixty days, without any claim on the part of persons pretending a privilege."

It is thus apparent, from the terms of the law, (C. C. 3501,) that the plea of prescription of one year, properly sustained, is an effectual bar to any action for the delivery of merchandise shipped on any vessel ; and it must follow that if the Article 3212 of the Code is to regulate the time when the prescription in this case commenced to run, the appellant can have no relief.

One portion of the Article 3212, taken by itself, or if perhaps it were transferred to a different part of the Code, would leave the subject beyond any two interpretations. Its terms are express ; a voyage is considered to have been made when more than sixty days have elapsed after the departure of the vessel.

To serve the case of appellees, the three Articles, 3501, 3502 and 3212, must be construed together. The first, to determine what prescription he is allowed to plead ; the last to fix the period when his prescription should commence to run. To enable him to do this successfully, the Articles should, according to the just rule of construction, treat of the same subject, and relate to the same matter, and must have been made to govern the same case.

Do the Articles 3212, 3501 and 3502, refer to the same subject or matter, and do they govern the same case?

The Article 3212, is to be found under the second section of the title of the Code which relates to privileges on ships and merchandise.

The Arts. 3501 and 3502, are to be found under the head of prescription.

Art. 3212 was, in my opinion, made generally to fix the time when a ship is presumed to have made a voyage, with reference to the period when a creditor, who has a privilege upon such ships, arising out of any of the causes mentioned in Art. 3204, seeks to exercise that privilege ; and particularly to Articles 3206, 7, 8, 9, 10 and 11, which relate to the sale of ships and the privileges which parties may have upon such ships as the property of the vendor. They provide, that where a ship has been *sold*, and has *made a voyage* in the name and at the risk of the purchaser, without any claim on the part of the *privileged* creditors of the vendor, that these privileges are lost and extinct against the ship, if she was in port at the time of the sale (Art. 3210) ; but that if a ship was on a voyage, at the time of the sale, the privilege of the creditor against the purchaser, shall only become extinct after the ship shall have returned to the port of departure, and the creditors of the vendor shall have allowed her to depart on another voyage for the account and risk of the purchaser, and shall have made no claim. Art. 3211.

Then follows, and as it seems to me, as a legal necessity, the Art. 3212, which fixes the time when a voyage is presumed to be at an end, and the consequence of not presenting the claim on the part of the person pretending a privilege within the time therein specified.

Besides this, it appears to me, that a correct reading of this Article, as well as those immediately preceding it, shows that the legislator had alone in view when these Articles were enacted, the security which the creditor might have upon a specific piece of property of his debtor for the payment of his debt.

Giving any force to these Articles which may be claimed for them, the obligation of the owner of a ship may still exist, whilst the privilege which rested upon his ship to secure the faithful performance of that obligation may, by the lapse of time, have been lost. As for instance : if supplies are furnished to a ship, the furnisher has a privilege upon the ship for payment ; but if he does not seek to exercise that privilege within a certain period, the privilege is lost. But the obligation of the owner still remains ; the furnisher is merely changed from a privileged to an ordinary creditor.

Upon this branch of the case, I am, therefore, of opinion, that Art. 3212 does not give the time when a shipper may bring an ordinary action asking for no privilege for the delivery of goods, but that it refers alone to the *privilege* which creditors have upon a ship.

The only prescription which, in my opinion, the defendants can invoke, is to be found under Article 3502 of the Code, which provides as follows : "The prescription mentioned in the preceding Article (one year) runs, with respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived."

The vessel upon which the goods for which this suit is instituted, never reached or attempted to reach the port for which she started. Prescription then, according to this Article, must commence to run from the day on which she ought to have arrived there. When that time was, or at what time it should have occurred, must be determined, I think, by the contract between the parties and the evidence in the record.

The contract was, that the goods should be taken to Doaksville, the carrier reserving the right to store and re-ship, in case the river would not allow of his going so high up.

The reservation of this right to store, did not alter the contract so far as regards his obligation to carry the goods to Doaksville. It allowed him the privilege, should circumstances prevent him from carrying the goods to their port of destination, to forward them by some other boat, and to have them stored in the meanwhile; but his obligation to have them delivered at or shipped to Doaksville, if it were possible for him to do so, still subsisted. *Hatchett* v. *Steamboat Compromise*, 12 An. 783.

These goods were landed at a place called Rowland, the river not allowing him to proceed any further, and there they remained until they were sold by the person with whom they were stored.

When the goods were landed at Rowland, the second obligation of the carrier, under his contract, commenced. This obligation was to re-ship the goods. This he never did, and nothing in the record shows that he attempted to re-ship them. He had proceeded a long distance up a falling river, and his whole efforts seem to have been directed to hurrying out of it as fast as he could. He never even notified the shipper that he had failed in performing his contract, and that his goods had been left to the mercy of a frontier warehouseman. He was thus placed in the category of a man who had violated his engagement, without giving notice of the violation to the parties in interest. Can a man, under these circumstances, plead prescription?

The law says he may. There is no exception made for bad faith by the Article of the Code which the defendants rely upon. But I am of opinion that he should be held to bring himself clearly within the law whose protection he invokes.

Prescription is a legal plea and must be enforced, whenever it is legally made. But prescription is of strict law; it is not presumed. It cannot be supplied by the courts. It is liable to interruptions, and can only be enforced upon the strictest evidence.

Now, this being, as I understand it, the well settled jurisprudence of this State, upon whom did the burden of proving the prescription relied upon in this case rest? The defendants.

And what is the period from which prescription began to run?

According to the views I have expressed when considering the Arts. 3212, 3502, from the time the goods ought to have arrived at Doaksville, taking into consideration the fact of their having been stored in consequence of the low stage of the river.

When the goods should have arrived at Doaksville, is not a question of law, but is a matter of fact. Upon whom did it rest to show this fact? Clearly the defendants. It was, in my opinion, incumbent upon them to show that the goods ought to have arrived at Doaksville one year before this suit was brought.

But this they have neglected to do. The record furnishes no clue as to when the goods ought to have arrived. The defendants have offered no proof. This duty devolved upon them; the court cannot supply the deficiency. The fault in not having done it lies at his own door. His plea is not made out by the face of the record, and is entirely unsupplied by any evidence. It must, therefore, fail.

Upon the merits, I think the case is with the plaintiff.

The defendants allege that they had sold the boat to *Dyas Powers*, whom they call in warranty.

The evidence to support this allegation is, I think, nothing more than a char-ter party. This evidence, under the special defence set up, was inadmissable as against the plaintiff. The proof should correspond with the allegation, and their allegation was not that their boat had been chartered, but that she had been sold.

The testimony is good, however, as between the defendants and their warrantor ; it having been received without objection.

I think there should be judgment in favor of the plaintiff and against the defendant, with the same judgment in favor of the defendant over against the warrantor.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed ; and that the plaintiff do recover and have judgment against the said *Jean A. Rousseau* and *Alphonse J. Jeaufreau in solido*, for the sum of four hundred dollars, with legal interest thereon, from the 19th day of November, 1856, and costs of both courts ; and that said defendants do recover and have judgment against the defendant in warranty, *Dyas Powers*, for the same sum of money, viz, four hundred dollars, and interest from the same date, and costs of both courts.

COLE, J., dissenting. The bill of lading obliged the captain of the steamer " Echo," to deliver the corn mills at the port of Doaksville, but it contained the clause, " privilege of storing and re-shipping, in case there is not water to get up."

It appears from the evidence, that it is the usage to carry the goods shipped, as far up as they can be taken ; then, if the water permits, to re-ship the goods in a lighter draught boat, if there be an opportunity to do so, and if not, they are stored.

It is also established, that the " Echo" could not get up higher than " Rowland," which is forty miles below Doaksville, and no boats were there by which the freight might have been re-shipped to Doaksville. The river was falling rapidly at the time. There was not water sufficient to make a trip that season to Doaksville, and the " Echo" never afterwards returned.

That the mills were stored with *Mrs. Markhouse*, who carries on a regular commission business : that she paid the " Echo" the freight on the mills, as far as Rowland, and the charge was in proportion to the distance the goods were taken.

It is also shown that the " Echo" discharged at Roland with *Mrs. Markhouse* other goods for the same consignees to whom the mills were consigned, and that they were afterwards received by them.

A member of the firm to whom the " corn mills' were consigned, testifies that he learned by a letter from *Mrs. Markhouse,* that the ten corn mills were at Rowland, Texas, in her warehouse, and she wanted the firm, as consignees, to accept delivery at Rowland, which they refused to do.

I am of opinion, that under the circumstances of this case, the defendants are not liable.

The privilege of " re-shipping" must be interpreted to refer to the period of the arrival of the " Echo" at a place where the water would not suffice for her further advance up, and not to an epoch a long time subsequent.

If, upon the arrival of the steamer at such a point, it were possible to re-ship the goods in a steamer of lighter draught, then it would have been the duty of the " Echo" to have re-shipped them.

It having been, however, impossible so to do, the obligation of the common carrier, under the bill of lading now under consideration, was to store them, and such is also proven to be the usage upon the river at Rowland and other points.

It seems unreasonable to suppose that the responsibility of the "Echo" continued until a season of high water.

The bill of lading referred to a certain voyage; its clauses and obligations are to be interpreted as referring to that trip.

The "Echo" having stored the "mills" with a regular commission house, according to the authorization of the bill of lading, and it being impossible to reship them at that time, the contract between the shipper and the common carrier were, under the circumstances of this case, terminated, except perhaps as to the duty of giving notice to the consignees.

But as this notice was given by the commission merchant with whom the goods were stored, plaintiff suffered no damages from not being notified by the captain of the "Echo."

As then it was impossible to have re-shipped the "mills" that season, as defendants were authorized to store them, and it was the usage so to do, as notice was given to the consignees, I think, that the defendants are not liable. Besides, two of the defendants cannot be held liable, because they had made a conditional sale of the "Echo," to the warrantor, and another person, and she was in possession of *Powers*, under this conditional sale, at the time the "mills" were shipped.

I consider it unnecessary to express any opinion upon the points discussed by the organ of the majority of the court, except so far as they are embraced in my opinion.

I am of opinion that the judgment of the District Court should be affirmed.

BUCHANAN, J., concurred in this opinion.