## LAURENT MILLAUDON *v.* PETER MARTIN.

The master of a merchant vessel or steamer, is an officer, within the meaning of art. 3499 of the Civil Code, and the action for his wages is prescribed by one year.
The steam tow-boats, plying on the Mississippi, between New Orleans and the Gulf of Mexico, are vessels performing voyages, like other vessels or steamers.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. This was an action for the balance of an unsettled account, instituted on the 6th May, 1840. The first item in the account was dated 14th August, 1836 ; and the last, the 26th January, 1838. The defendant answered, on the 27th May, 1841, by a general denial, and by averring, in reconvention, that plaintiff was indebted to him in the sum of $6000, for services rendered by him as master of the steam tow-boat, Pacific, from 1st May, 1836, to 1st May, 1839, at the rate of $2000 a year ; the boat belonging to plaintiff, and being employed as a tow-boat on the Mississippi, between New Orleans and the Gulf of Mexico. The plaintiff discontinued his demand, and pleaded the prescription of one year to the reconventional claim set up by defendant. The allegations of the latter as to the ownership of the steamer, and the value of the services rendered by him, were proved ; but the court below, considering the reconventional demand as a distinct and independent claim, sustained the plea of prescription. The defendant appealed.

*Benjamin,* for the plaintiff.

*Eustis,* for the appellant. The court below erred in sustaining the plea of prescription. Art. 3499 of the Civil Code, which declares, that " the *wages* of the *officers,* sailors and *others of the crew,*" are prescribed by one year, does not apply to the defen-

dant, who was captain. *Ex vi terminorum*, it is apparent that this prescription only applies to *such officers and sailors as form a part of the crew ;* but the term crew in *common parlance* excludes the captain, as we say, " the captain and crew." The captain before he begins a voyage must provide the vessel with a suitable and efficient crew. So the act of Congress, 20th July, 1790, sect. 3, provides, that if the mate and a majority *of the crew*, discover that a vessel is leaky, they may bring her back having applied to the master, &c. The words used in this act prove conclusively, that by the word *crew*, is meant all sailors and officers of the vessel, except the captain. Articles 3204, $\S$ 11, and 3500 of the Civil Code, prove this also. An examination of the provisions of the Civil Code shows, that when the captain is spoken of, he is mentioned, *eo nomine*. Art. 3204, $\S$ 6, 7, 11. Art. 3213. He cannot, therefore, be presumed to be included under the general term, officers. The class of cases to which the prescription of one year applies, forbids the conclusion that the master of the vessel, who is an .officer of high confidence, and the agent of the owners, is embraced by it. Vide, Abbott on Shipping, 161, 163, 458 et seq. 3 Kent's Com. 121, &c.

But considering the cause in another aspect, and admitting, for the sake of argument, that the word *officer* includes the captain, still the 3499th art. has no application to the defendant—the plaintiff in reconvention. 1st. Because the following art. (3500) declares, that " with respect to the wages of officers, sailors, and *others of the crew of a ship*, the prescription runs only from the day when the voyage is completed." But the defendant was the master of a *tow-boat*, employed in plying between the Balize and New Orleans, which performed only trips, and not *voyages*. Indeed, tow-boats are but a *species of ferries*, and never undertake *voyages*, since a voyage " is the passage of a ship upon the sea from one port to another," (vide Bouvier's Law Dict. vol. 2, p. 481, *verbo*, Voyage,) for which tow-boats, by their construction and destination, are wholly unfit. But if this be a mistake, ought not Millaudon to have shown when the voyage ended ; and does not his failure to do so, prevent him from availing himself of the legal exception on which he relies ? 2d. The term *wages*, employed in both these articles of the Civil Code, is usually applied

to compensation paid weekly, or monthly, and *salary* to annual compensations. At least, it is so used in the Civil Code, which speaks of salaries of overseers, clerks, secretaries, &c., (art. 3503 ;) and this consideration also prevents the applicability of art. 3499 to the defendant, who has proved that his annual salary was $2000. 3d. There is another and paramount consideration establishing the same principle, which is ; that tow-boats were not known at the time the Civil Code was enacted, and, therefore, the legislation contained in it, can have no possible reference to them. 13 La. 525.

But even if the plea of prescription was applicable, the plaintiff could not avail himself of it in this particular case, because of the provision of the 3486th art. of the Civil Code, which declares, that *an acknowledgment* of the debt intercepts prescription. In *Whetmore* v. *Smith*, 2 Root's Conn. Rep. 1 ; 1 N. H. Rep. 19 ; *Cogswell* v. *Dolliver*, 2 Mass. Rep. 217 ; *Bunting* v. *Lagow*, 1 Blackford's Ind. Rep. 373, it is decided, that the existence of unsettled accounts between the parties, as in the present case, is equivalent to an acknowledgment, and suspends prescription. In the absence of any positive explanation in our own Code, of the meaning of the term *acknowledgment*, that, received in our sister States, in *pari materia*, will no doubt be deemed sufficient. See also, *Tucker* v. *Ives*, 6 Cowen's Rep. 193. *Chamberlain* v. *Taylor*, 9 Wendell's Rep. 126.

*Schmidt*, on the same side. The provisions of the 3499th art. of the Civil Code, are borrowed literally from the 433d art. of the Code de Commerce of France. The terms used by the French Code are, "gages et loyers des officiers, matelots *et autres gens de l'équipage.*

Boulay Paty, in his Droit Commercial Maritime, vol. 2d, p. 278, Brussels edition, 1838, says, that the sense of the article is clear, and, that it is evident that it applies only to *gens de l'équipage.*

It is, consequently, only necessary to ascertain the meaning of the term, in order to be convinced that it does not include the captain. Fortunately, Pardessus has explained the term with such precision as to leave no room for doubt or controversy. His language is : " Le service d'un navire est fait, sous la direction

Millaudon v. Martin.

du capitaine par un grand nombre de personnes qui portent diverses qualifications."

"Toutes ces personnes, et le capitaine lui-même consideré comme locateur de ses services, sont compris sous la dénomination collective de *gens de mer*. Lorsqu'on veut distinguer le capitaine, et qu'il est en opposition avec ceux qui lui sont subordonnés, ces derniers prennent le nom de *gens de l'équipage*." Pardessus adds : *Il est important de ne pas perdre de vue cette distinction necessaire dans un grand nombre de circonstances.* Pardessus, Droit Commercial, vol. 3, p. 110, tit. 3, No. 667, Paris edition, 1831.

If Pardessus be right, which can hardly be questioned, then it is obvious that the captain, so far from being included under the provisions of the article, is necessarily excluded by the use of the words *gens de l'équipage*, which are always used in opposition to him, and include all others belonging to the vessel than the captain. So in English, the captain, though a *mariner*, (*gens de mer*,) is not one of the *crew*, (*gens de l'équipage*,) because the word " *crew*," is only applied to the officers, sailors, &c., who are under the captain's orders.

Payment is one of the causes which interrupt prescription. In the present suit, Millaudon's account shows various payments. Vid. Troplong on Prescription ; Vazeille on Prescription, as well as the Civil Code of this State, under the title of Interruption of Prescription.

GARLAND, J.* The plaintiff claims the sum of $1798 50, the balance of an account current between him and the defendant. The items in the account filed are, the balance of a former account rendered, and various charges of *cash paid* to the defendant, at different dates. The latter answers by a denial of any indebtedness to the plaintiff, but sets up a claim in reconvention against him for $6000, for services rendered as master of the steam towboat Pacific, which belonged to the plaintiff, for three years previous to May 1st, 1839, at the rate of $2000 per annum ; for

---

* BULLARD, J, was not present on the argument of this case, and, consequently, took no part in the decision.

which he prays for judgment.    When the cause was called for trial, the plaintiff offered no evidence to sustain his demand, but discontinued it, and at the same time pleaded the prescription of one year to the demand in reconvention.    The defendant offered evidence to prove, that for about three years previous to May 1st, 1839, he was master of the steam tow-boat Pacific, belonging to the plaintiff, which was engaged in towing vessels from New Orleans to the Balize, and to sea, and back again, for hire.    He proved that his services were worth $2000 per annum; and it is shown that the plaintiff sold the boat, about the 1st May, 1839. The demand in reconvention was presented and filed May 27th, 1841, more than one year after the suit was commenced on the account, and more than two years after the defendant had left the service of the plaintiff.    On the plea of prescription, the court below gave a judgment against the defendant on his demand in reconvention, and he has appealed.

The plaintiff, to sustain his plea of prescription, relies upon article 3499 of the Civil Code, which provides, that the action "for the payment of the freight of ships and other vessels, the wages of the officers, sailors, and others of the crew," shall be prescribed by one year.    Upon this provision, apparently so clear, the counsel for the defendant have based a long and ingenious argument, to prove that the master or captain of a ship or steamboat is not an officer within its meaning, and that his wages are only prescribed by ten years.    They tell us, that among nautical men, the master of a merchant ship is not considered or called an officer, and that he does not form a part of the crew.    Upon this subject, the record gives no information; but as our Code was framed by legal men, we are to presume they looked to legal works for definitions, and the meaning of particular words.—Bouvier, in his Law Dictionary, vol. 2, p. 105, gives a definition of the term "master of a ship," viz., "the commander or first officer of a ship, a captain, &c."    The definition given by Professor Wilson of the words *maitre de navire*, is master, captain, or commander of a ship.    Vide Wilson's French and English Dictionary —verbo *Maitre.*  The Lex Mercatoria Americana, p. 131, says, the master of a ship is he to whom is committed the government, care, and direction of the vessel and cargo.    In their nomination, the

amount of interest, not numbers, predominates; "but when con-
stituted, they, like all other officers of the public," are accounta-.
ble, &c. The mate of a merchant ship is called "the first officer
under the master," p. 181. Curtis, in his Treatise on the Rights
and Duties of Merchant Seamen, 161, says; "the master of a
merchant vessel is that officer to whom is intrusted the entire
command of the ship," &c., appointed by the owners, and he
stands towards them in a different light than towards third per-
sons. Chancellor Kent says, "the captain of a ship is an officer
to whom great power, momentous interests, and large discretion,
are necessarily confided," &c. Notwithstanding these definitions,
the counsel insists, that our Code, and the acts of Congress, do
not consider the master or captain of a merchant ship as an officer.
They first refer us to article 3204, Nos. 6, 7, 11. It will be re-
membered that this article is one which states what privileges are
allowed upon ships and merchandize. The first clause gives a
privilege to the captain for his wages; and it was probably thought
necessary to name him, as the commercial law, from motives of
policy, did not give such a right. The second clause gives a pri-
vilege for money lent to the captain, to purchase necessaries for
the vessel. It was necessary to name the captain, for the purpose
of designating the officer to whom the money must be lent, to en-
title the lender to a privilege. We see nothing in the 11th clause
which can be viewed as declaring that the captain is not an offi-
cer of the ship, or calculated to raise such a presumption. It is
the clause that gives the owners of goods, or merchandize, a privi-
lege for damage sustained through the fault of the captain or crew.
Article 3213 gives the captain a lien for the freight on the mer-
chandize he transports in his ship, without which he would have
lost a right accorded by the commercial law; but does that prove
that he is not an officer? The right is given, not because the
captain is not an officer, but because he is the commanding offi-
cer. The mate would have the same right, if, by the death of the
master at sea, or any other such cause, he should become the
commander of the vessel. The name of captain implies an office,
and conveys the idea of an officer, in the general understanding of
the term. We have been referred to the act of Congress of 3d
March, 1835, § 3, to prove that the master is not an officer. It

commences by declaring, that "if any master or other officer of any American ship or vessel on the high seas," shall maliciously beat or imprison the crew, &c., he shall be punished, &c. These words, *master or other officer*, the counsel tells us, prove that the master is no officer, and was not so considered by Congress. To sustain this assertion, we are referred to another act of July 20th 1790, § 3, which provides, "that if the mate, or first officer under the master, and a majority of the crew of any ship or vessel," &c. Now, will not the words, "mate, or first officer under the master," as conclusively prove that the mate is not an officer, as the words "master, or other officer," prove that the master is not an officer? It appears to us they do.

The counsel further rely upon a decision in 3 Sumner's Rep. 209, to support their view of the case. This was a prosecution under the act of Congress of 1835, against the master of a ship, for beating and confining the mate; and the question was, whether the mate, who was called the chief officer of the ship, made a part of the crew. Judges Story and Davis held, that he did form a part of the crew; and the opinion as clearly proves, that the master, too, is often included as a portion of the crew. In the piracy act of 1819, chap. 200, the public ships of the United States are directed to protect merchant vessels, and their *crews*, from piratical aggression, &c. This expression, as clearly includes the master and officers, as it does the sailors. So, in the piracy act of 1820, it is said, if any person, being of the crew or ship's company, of any piratical vessel, shall land, &c., they shall be punished, &c. There cannot be a doubt, we suppose, that these words would include the piratical captain, if he were taken and prosecuted. In common parlance, we often hear it said, that "the vessel was lost, but that the crew was saved;" would any one infer from this, that the master was drowned, because, in technical language, he formed no part of the crew, and was not an officer?

The counsel, in relying upon the French authorities, seem to forget, that it is a matter of regulation in France, under the Code of Commerce, and various ordinances, which keep up a distinction between the master and his subordinates. There are different grades of commanders. The captain, the master, and patron,

depending on the size of the vessels they command, and the voyages they make, whether foreign, or coastwise.

We have no doubt, that the master of a merchant ship or steamboat is an officer within the meaning of article 3499 of the Code, and that the action for his wages is prescribed by the lapse of one year.

We do not think, that because the defendant chooses to call his compensation a salary instead of wages, that it changes the law in relation to prescription.

The argument that steam tow-boats are not vessels performing voyages, as other vessels or steamboats, was met and decided in the case of *Davis* v. *Houren et al., ante*, p. 255.

We are further of opinion, that the defendant does not come within the exception of article 3500 of the Code, which declares, that the prescription does not run where there is a note given, or account acknowledged. There was no note, or account acknowledged in this case. On the contrary, the account of the plaintiff is denied in the answer. The last item in that account is dated the 26th of January, 1838, more than three years before the defendant set up his demand. It is not alleged, nor proved, that the sums which the plaintiff charges as having been paid to the defendant, were on account of his demand for services as master of the boat, nor can they be so supposed. The plaintiff has not proved they were paid at all, and as the defendant denies it, we take it to be true that they were not. But admitting they were so paid, the defendant cannot benefit by it, as more than three years have elapsed between the last payment and the presentation of his demand.

*Judgment affirmed.*＊

---

＊*Schmidt*, for a re-hearing. The counsel of the appellant never contended, nor meant to contend, that the captain was not *an officer* of the ship, in the usual acceptance of the word *officer*. This, on the contrary, was distinctly admitted, and they traced the etymology of the word, from which it is evident that the captain, having important duties assigned to him, was unquestionably an officer, nay, the commanding officer of a vessel. If the controversy, therefore, had depended solely on the solution of the question, whether the

captain is an officer in the usual sense of that word, as the court seem to suppose, no difference of opinion could possibly have arisen, and the counsel of the appellant would have abstained, both out of respect for the court, and for themselves, from urging any argument on a question so clear as to be almost self-evident.

The doctrine of the appellant's counsel was this ; that the captain, although an officer, was not one of the officers spoken of in the 3499th art. of the Civil Code, which provides, that the *wages of the officers, sailors and others of the crew*, are prescribed by one year.

The grammatical construction of the sentence shows, that the word *crew* controls the whole, and the provision is equivalent to the declaration, that all the officers, sailors, and others comprising the *crew of a vessel*, must claim their wages within one year after the termination of the voyage. The appellant contends that the captain of a vessel is not included in this provision. The Civil Code, when it intends that a law shall apply to the master, invariably uses the word *captain*. *Vid.* Civil Code, art. 3204, nos. 6, 7, 11 ; art. 3213, &c. The provisions of the 3499th article, were intended more especially for the protection of the captain, who hires the crew and all the officers, and who is personally liable for the payment of their wages, and who, in almost every case, pays such wages. It would be a strange anomaly to apply to the captain, and make him the victim of, a law, which, beyond all doubt, was made to protect him against the demands of those he had employed, after a certain lapse of time, and particularly in foreign ports, where he would, most probably, not be prepared with the evidence requisite for his defence.

The provisions of the 3499th article, are a literal transcript of the 433d article of the Code de Commerce of France, and the expressions on the French side of the Civil Code of this State, are copied, *verbatim*, from the last named article.

A general rule of construction, requires us to look to the motives and intentions of the legislature, whenever it becomes necessary to interpret the meaning of a legal enactment. So, when one country re-enacts a law already existing in another, the natural and the only legitimate presumption is, that the law thus adopted was intended to have the effect in the new country, which it had in the country from whose legislation it was borrowed ; and this inference becomes irresistible, when, on a comparison of the laws, you find, as in the present instance, that the language is identical.

But if this be true, the observations of the court, that " *the counsel, in relying upon the French authorities, seem to forget that it is a matter of regulation in France, under the Code of Commerce*," &c. are inexplicable.

It is evident, that the counsel have not forgotten the regulations of the French Code of Commerce, since, in both their oral and written arguments, its provisions are cited ; and the doctrine which they have urged upon the court, is, that the regulations of the Civil Code of this State, being copied from, and identical with those of the French Commercial Code, regard should

be had to the latter in the intepretation of the former. The counsel of the appellant have also shown, that Pardessus, Droit Commercial, Vol. 3, p. 110, no. 667, says : " *Lorsqu'on veut distinguer le capitaine*, et qu'il est en opposition *avec ceux qui lui sont subordonnés, ces derniers prennent le nom de* gens de l'équipage." Now the term *gens de l'équipage*, is the identical expression used in the 3499th article of the Civil Code of this State ; and as it is only used in opposition to the captain, and to designate the persons under his command, the provision is inapplicable to him.

In addition to this, it should be taken into consideration, that steam tow-boats were not in existence when the law was made ; that the masters of these vessels are salaried officers, employed by the year, which is not the case with masters of merchant vessels ; that, in order to make the article of the Code affect them, it is necessary, first to show that it was applicable to captains of merchant vessels performing voyages, and then by analogy to apply it to masters of tow-boats ; and that too, in a matter of *prescription*, which is never, in any case, extended by analogy so as to include cases not provided for by the strict letter of the law.

*Re-hearing refused.*

---

In the cases of *Littleberry E. Stainbach* v. *John Sharkey,* and *Caleb S. Benedict and others* v. *Edward Stow*, from the Commercial Court of New Orleans ; and of *Paul Langlais* v. *Henry T. Williams*, and another, from the District Court of Ascension, the judgments of the lower courts were affirmed, on appeal, in New Orleans, during the period embraced by this volume.