LEARNED et al. v. BROWN et al.

RUMBLE et al. v. SAME.

(Circuit Court of Appeals, Fifth Circuit. May 31, 1899.)

No. 814.

1. MARITIME LIENS—SUPPLIES FURNISHED IN HOME PORT.
   Where a vessel is owned by resident citizens of a state, and her headquarters are at a port therein, such place must be treated as her home port, and no lien is given by the general maritime law for supplies furnished at such port, which are presumed to have been furnished on the credit of the

owners, and any liens asserted for such supplies must rest upon the laws of the state.[1]

**2. SAME—UNDER STATUTES OF LOUISIANA—PRESCRIPTION.**

Under the statute of Louisiana relating to liens or privileges against ves sels (Code 1870, art. 3237), as construed by the courts of the state, a vessel owned in the state, and trading in its waters, is not considered as making voyages, within the meaning of that article, and the privileges granted thereby may be asserted at any time within six months, without regard to the number of trips made by the vessel during that time.[2]

**3. SAME—LIEN FOR MONEY ADVANCED.**

The statute of Louisiana grants no lien for money advanced to the mas ter or owners of a vessel in the home port, no matter for what purpose.

**4. SAME—WAIVER OF LIEN.**

Parties who have united in a libel of intervention against a vessel do not waive their right to a lien by withdrawing such libel and filing separate libels.[3]

**5. SAME—LIEN BY PART OWNER.**

The statute of Louisiana does not authorize a part owner of a vessel to assert a lien against it for wages due him, as against creditors of the vessel.

**6. SAME—PREMIUMS FOR INSURANCE.**

There is no lien on a vessel, either under the general maritime law or un der the Code of Louisiana, for premiums due on insurance policies taken for the benefit of the owners, and from which lienholders would receive no benefit in case of loss.

**7. ADMIRALTY—FURNITURE OF VESSEL.**

Where a dealer in musical instruments placed a piano on a steamer as an advertisement, under a verbal agreement with the captain under which it could be removed at any time, at the option of either party, such piano remained the property of the dealer, and did not become any part of the furniture of the vessel, so as to pass under a mortgage of the vessel and her apparel and furniture; nor did it pass under a sale of the vessel in ad miralty as a part of her property, it having been removed by leave of court after her seizure, but before the sale.

Appeal from the District Court of the United States for the East ern District of Louisiana.

From April, 1898, to the 22d day of September, 1898, the steamboat Liberty, owned by W. P. Aucoin and J. P. McElroy, resident citizens of the state of Louisiana, with headquarters at New Orleans, was running in the Bayou Lafourche trade, making frequent short trips, wholly within the state of Louisi ana. On the last-mentioned date she was seized on an admiralty warrant under a libel filed by a seaman for wages. On the 24th day of October, 1898, the Liberty, her tackle, apparel, engines, furniture, etc., were sold under an order of the court, and realized the sum of $2,600. During the time the Lib erty was running in the Lafourche trade, her owners incurred many debts on her account, and numerous creditors intervened in the district court, claim ing to have advanced money, provisions, supplies, etc., to said steamboat, and asserting, on account thereof, a lien and privilege, under the laws of Lou isiana. After much evidence, and a report by the commissioner, the district court made a decree of distribution as follows:

"This cause came on this day for confirmation of the tableau of distribu tion, filed by the commissioner, in conformity to the decree herein entered, and, no opposition having been made thereto, it is ordered, adjudged, and de creed that said tableau be, and the same is hereby, approved and confirmed,

---

[1] As to maritime liens for supplies and services, see note to The George Du mois. 15 C. C. A. 679.

[2] As to maritime liens under state statutes, see note to The Electron, 21 C. C. A. 21.

[3] As to waiver and extinguishment of maritime liens generally, see note to The Nebraska, 17 C. C. A. 102.

and that the proceeds herein in the registry of the court be distributed accordingly, to wit:

| | | |
|---|---:|---:|
| Gross proceeds deposited in registry | | $2,600 00 |
| Amount paid under order of court of October 28, 1898, to marshal for keepers' fees and cost of pumping | $102 50 | |
| Amount paid to mariners under decree of December 10, 1898, for wages | 576 46 | |
| | | 678 96 |
| Balance now in registry | | $1,921 04 |
| From which is to be paid: | | |
| Clerk's costs | $ 89 50 | |
| Registrar's fee, $2,600 at 1 per cent | 26 00 | |
| Marshal's costs | 148 80 | |
| Proctor's docket fee to H. W. Robinson | 10 00 | |
| Proctor's dep. fees to H. W. Robinson | 75 00 | |
| Commissioner for report and tableau | 75 00 | |
| Stenographer | 382 60 | |
| | | 806 90 |
| Balance | | $1,114 14 |
| Claims to be paid by preference: | | |
| (1) To J. P. McElroy, wages as clerk | $112 50 | |
| (2) To C. A. Healy, as subrogee | 130 00 | |
| | | 242 50 |
| | | $ 871 64 |

Balance to be distributed pro rata, as follows, to wit:

| Names. | To Receive. |
|---|---:|
| Samuel S. Brown | $463 21 |
| Samuel S. Brown | 12 14 |
| La. Construction & Imp. Co. | 7 55 |
| M. G. T. Stemple | 4 44 |
| Ins. Co. of North America | 23 70 |
| St. Paul Fire & Marine Ins. Co. | 23 70 |
| Greenwich Ins. Co. | 23 70 |
| Providence Washington Ins. Co. | 23 70 |
| Ins. Co. of North America | 14 30 |
| M. Waller | 8 40 |
| Donaldsonville Fdy. & Mach. Co. | 16 90 |
| J. P. Hogan | 7 50 |
| Salmen Brick & Lumber Co. | 20 70 |
| A. E. Hotard | 31 00 |
| Newman & Spranley Co., Ltd. | 19 70 |
| M. D. Lagan | 11 40 |
| A. S. Daniels | 62 95 |
| Estate Alfred Tufts | 17 08 |
| Paul D'Herete | 42 17 |
| C. W. Ward | 3 00 |
| Geo. Boning | 22 50 |
| John Laskey | 4 20 |
| Wid. A. Ferrandez | 3 20 |
| William Thomson | 60 |
| James Cummings | 60 |
| George Clevis | 60 |
| W. Thomas | 60 |
| Cooley Williams | 60 |
| | $870 14 |
| W. P. Aucoin for 1 day's witness fee | 1 50 |
| | $871 64 $ 871 64 |

"It is further ordered that the piano claimed by the Medine Music Company, marked 'Schubert No. 19,014,' as per the claim of said company herein, be restored to them, and the bond furnished by it for the release thereof canceled, and the surety thereon released."

From this decree R. F. Learned, S. E. Rumble, and T. V. Wensel, mortgage creditors of the steamboat Liberty, and interveners for remnants, appealed to this court, assigning errors, as follows: "(1) That inasmuch as the steamboat Liberty is owned by residents of the state of Louisiana domiciled in the city of New Orleans, in said state, no lien or privilege attaches to said vessel, or against the proceeds thereof, in favor of domestic material and supply men, for materials, supplies, and money furnished said steamboat, excepting such privilege as is allowed by the statute of said state. Hence the court erred in decreeing in favor of the material and supply men (each and every one of whom is named in the judgment passed in this cause in their respective favor) for and on account of materials, supplies, and money furnished said steamboat on voyage and voyages prior to the last voyage of said steamboat. (2) That the court erred in allowing the claim of Samuel S. Brown for thirty dollars towage and one thousand one hundred and forty dollars for coal supplied, because said services and supplies were rendered and furnished upon the credit of the owners of said steamboat Liberty, and not upon the credit of said vessel, and were not rendered for, or on, or in aid of, the last voyage. (3) That the court erred in allowing judgment in favor of C. A. Healy, because —First, said C. A. Healy did not furnish money under such circumstances or conditions sufficient to create a lien and privilege therefor on said steamboat; second, that no subrogation occurred in favor of said C. A. Healy for and on account of the money paid out by him; third, that said C. A. Healy did not furnish any money for the necessities of said steamboat for, on, or during its last voyage. (4) That the court erred in decreeing in favor of M. D. Lagan, A. S. Daniels, estate of Alfred Tufts, Paul D'Herete, C. W. Ward, George Boning, and John Laskey because—First, said interveners waived their lien and privilege, if any they had, upon said steamboat Liberty, by voluntarily releasing the seizure they caused to be effected in this cause; and, second, because the price of the materials and supplies decreed for in favor of said interveners was not on account of materials and supplies furnished during or for the necessities of the last voyage of said steamboat. (5) That the court erred in decreeing in favor of J. P. McElroy wages as clerk, said J. P. McElroy being a part owner of said steamboat during the time such services were rendered. (6) That the court erred in awarding to the Medine Music Company the piano taken off of said steamboat Liberty under order of court, and erred in entering decree for cancellation of the bond furnished by said company binding themselves to return said piano or the sum of two hundred and fifty dollars (its admitted value), as the court might direct, as said piano was a part of the furniture of said boat, and, if the purchasers of said boat did not acquire the ownership of said piano at the marshal's sale in this case, then these petitioners, together with the other creditors of said vessel, are entitled to said piano, or the value thereof, for payment of their claims and demands against said steamboat. (7) The court erred in decreeing in favor of the following named insurance companies, to wit, Insurance Company of North America, St. Paul Fire & Marine Insurance Company, Greenwich Insurance Company, Providence Washington Insurance Company, Insurance Company of North America, because the insurance written by said respective underwriters was for the sole and exclusive benefit and use of the owners of the steamboat Liberty, and, further, because no lien and privilege exists in favor of said companies, or in favor of any of them, on the said steamboat, or against the proceeds thereof, for or on account of anything. (8) That the court erred in declining to decree in favor of petitioners, appellants herein, who were petitioners for surplus remaining after payment of all liens and claims of prior rank to their mortgage; that, after payment of such liens and claims, a surplus should exist, which was disbursed among interveners, who were and are without lien and privilege on said steamboat Liberty, or the proceeds thereof, and therein the court further erred. (9) That the court erred in decreeing in favor of interveners, who made no due tender or offer of testimony to support their claims; these petitioners, S. E. Rumble and T. V. Wen-

sel and Samuel S. Brown, being the only parties before the court who offered testimony to support their respective claims and demands."

S. E. Rumble and T. V. Wenzel, who were the purchasers at the marshal's sale, also appealed, assigning errors as follows: "(1) That the court erred in awarding to the Medine Music Company the piano taken off of said steamboat Liberty under order of court. (2) That the court erred in refusing to award to petitioners the said piano, which was a part of the furniture and apparel and appurtenances of said steamboat Liberty at the time said vessel, together with her furniture, apparel, appurtenances, etc., was purchased by petitioners at marshal's sale, made under order of court in this cause. (3) That the court erred in not dismissing the intervention of the Medine Music Company, because said interveners did not offer evidence to substantiate the allegations of their petition."

John D. Grace, for appellants.

Guy M. Hornor, for appellee Brown.

W. C. McLeod, for appellee Medine Music Co.

J. A. Woodville, for appellees Lagan and others.

J. H. Ferguson, for appellees Insurance Cos.

G. W. Flynn, for appellees Hotard and others

T. M. Gill, for appellee McElroy.

Richard Peet, for appellee Healey.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts, the opinion of the court was delivered by PARDEE, Circuit Judge.

The owners of the steamboat Liberty being resident citizens of the state of Louisiana, with headquarters at New Orleans, the port of New Orleans must be treated as the home port of the vessel. See The Thomas Fletcher, 24 Fed. 375; The Rapid Transit, 11 Fed. 322. The privileges asserted by the material men involved in this appeal are for supplies and materials furnished in the home port, which, under general maritime law, are presumed to have been furnished upon the credit of the owners, and no maritime lien resulted. The question presented, then, is whether these material men had a lien and privilege under the law of Louisiana. The appellants concede that the statutes of Louisiana grant a privilege, but contend that, as to the material men, the privilege is granted for the last voyage only. As the Liberty was trading within the state, making short and frequent trips from New Orleans to Bayou Lafourche and return, the effect of the appellants' contention, if successful, is that none of the supplies and material furnished are privileged, except those furnished during the last trip; and the practical result would be to deny all credit, under the law of Louisiana, to steamboats owned in Louisiana and trading within the state.

Civ. Code La. 1825, art. 3204, is as follows:

"The following debts are privileged on the price of ships or other vessels, in the order in which they are placed: (1) Legal and other charges, incurred to obtain the sale of a ship or other vessel, and the distribution of the price. (2) Debts for pilotage, wharfage and anchorage. (3) The expenses of keeping the vessel from the time of her entrance into port, until sale, including the wages of persons employed to watch her. (4) The rent of stores, in which the rigging and apparel are deposited. (5) The maintenance of the ship and her tackle and apparatus, since her return into port from her last voyage. (6) The wages of the captain and crew employed on the last voyage. (7) Sums lent to the cap-

tain for the necessities of the ship during the last voyage, and reimbursement of the price of merchandise sold by him for the same purpose. (8) Sums due to sellers, those who have furnished materials and workmen employed in the construction, if the vessel has never made a voyage, and those due to creditors for supplies, labor, repairing, victuals, armament and equipment, previous to the departure of the ship, if she has already made a voyage. (9) Money lent on bottomry for refitting, victualling, arming and equipping the vessel before her departure. (10) The premiums due for insurance, made on the vessel, tackle and apparel, and on the armament and equipment of the ship. (11) The amount of damage due to freighters for the failure in delivering goods which they have shipped, or for the reimbursement of damage sustained by the goods through the fault of the captain or crew."

Article 3212 is as follows:

"A ship is considered to have made a voyage when her departure from one port and arrival at another shall have taken place, or when, without having arrived at another, more than sixty days have elapsed between the departure and return to the same port, or when the ship, having departed on a long voyage, has been out more than sixty days without any claim on the part of persons pretending a privilege."

Construing these articles, the courts of the state held that ships trading inland, making short trips on the Mississippi river and its bayous, were not making a "voyage," within the sense of the statute, every time the ship made one of these short trips, but as for such vessels the voyage should be considered a period of 60 days, during which time liens for supplies and materials might be asserted. Shirley v. Fabrique, 15 La. 140; Lee v. Creditors, 2 La. Ann. 599; Scott v. Creditors, 3 La. Ann. 40; Blanchin v. The Fashion. 10 La. Ann. 49; Mooney v. The Hondurino, 11 La. Ann. 538; Van Wickle v. The Belle Gates, 12 La. Ann. 270; Gails v. The Osceola, 14 La. Ann. 544.

This construction as to the term of privileges upon ships, steamboats, and other vessels trading in the inland waters of Louisiana was enforced until 1858, when the following act was passed:

"An act relative to prescription of privileges against ships, steamboats and other vessels. approved March 16, 1858.

"Section 1. Be it enacted," etc., "that from and after the passage of this act the term of prescription of privileges against ships, steamboats, and other vessels, shall be six months.

"Sec. 2. Be it further enacted," etc., "that all laws, or parts of laws conflicting with this act, be and they are hereby repealed."

Since the passage of this act, the uniform jurisprudence in the Louisiana courts, and in the courts of the United States dealing with the same, has been to give the material men a domestic lien or privilege on ships, steamboats, and other vessels owned in the state of Louisiana and trading in the inland waters of Louisiana, for a term of six months. In 1870, when the Civil Code of Louisiana was revised, article 3204 of the Code of 1825, concerning the privileges on ships and merchandise, was revised, becoming article 3237 of the Code of 1870, and the act of 1858 was incorporated therein, as follows: "The term of prescription of privileges against ships, steamboats and other vessels shall be six months." There may be room for argument, under the Code as revised, that the general provision with regard to prescription is controlled by the special provisions contained in some of the articles as to the time

94 F.—56

when privileges may be asserted; but we think that under the jurisprudence of the state, and following the reason of the case, the proper construction of the article in the Revised Civil Code is that steamboats owned in Louisiana, and trading in the waters of the state, are not making "voyages," within the sense of the article, and the privileges granted by the article on such vessels may be asserted within six months. This disposes of the first assignment of error.

The second assignment is directed against the privilege claimed by Samuel S. Brown for coal furnished the Liberty within four months prior to her seizure; the contention being that, under the evidence in the case, this coal was furnished by Brown upon the personal credit of the owners, and not on the credit of the steamboat. As we read the evidence, Brown did not furnish the coal on the personal credit of the owners, but did furnish it upon the credit of the steamboat.

The third assignment of error is directed against the privilege claimed by C. A. Healy for moneys furnished to the master for the purpose of paying off wages and other claims against the Liberty. The Louisiana Code grants no lien for money advanced to the master or owners of the ship in the home port, no matter for what purpose. "In Grant v. Fiol, 17 La. 158, we held that a creditor for advances or loans in money made to the owner, and applied to the use of a vessel, has no privilege allowed him by law, because he is not subrogated to the rights of those whose privileged claims have been paid out of the money loaned. The claim of the appellants comes within none of the cases provided for by article 3204 of the Civil Code, by which privileges are allowed on the price of ships or other vessels." Hill v. Boat Co., 2 Rob. (La.) 35, 36. "The advance was made to the owner at the vessel's home port, and, under the authority of repeated decisions of our predecessors, conferred no privilege. In the case of Grant v. Fiol, 17 La. 158, the interveners, Sloo & Byrne, claimed a privilege for a sum of money which, they alleged, was loaned by them to the owner of the vessel, and was applied to the payment of the ship carpenter, sailmaker, and crew of the vessel, in order to enable her, by the payment of those claims, to prosecute her intended voyage. It was then held that the expression 'supplies' ('fournitures'), used in the eighth paragraph of article 3204 of the Civil Code, applied to materials sold or furnished to the vessel, not to money or funds advanced. It was also held that the subsequent application of the money by the shipowner to the payment of carpenters, sailmaker, and crew, privileged creditors, did not operate to the lender's benefit; that there was no legal subrogation, and no conventional subrogation was pretended; that privileges were stricti juris, and not to be extended by implication or analogy. The doctrine laid down in Grant v. Fiol was reiterated in the cases of Bank v. The Barque Jane, 19 La. 1, and Hill v. Boat Co., 2 Rob. (La.) 36." Hyde v. Culver, 4 La. Ann. 9, 10. See Wickham v. Levistones, 11 La. Ann. 702. It follows that the lower court erred in decreeing a privilege in favor of Healy.

The fourth assignment of error, complaining of the decrees in favor of Lagan, Daniels, and others, because the said interveners

waived their lien and privilege, if any they had, upon said steamboat Liberty, by voluntarily releasing the seizure they caused to be effected, is not well taken. The parties united in a common libel of intervention. On objection being made thereto, the libel was withdrawn, and the parties filed individual libels. It is difficult to see how these interveners lost or abandoned any rights or privileges.

The court below decreed in favor of one of the owners of the steamboat, J. P. McElroy, for his wages as clerk. It is difficult to conceive how an owner can have a lien on his own property, and assert the same against the debts which he individually owes. Such a lien was denied in Dowling v. The Reliance, 1 Woods, 284, Fed. Cas. No. 4,042, and Kellum v. Emerson, 2 Curt. 79, 83, Fed. Cas. No. 7,669. The article of the Louisiana Civil Code giving liens on ships contemplates no such result.

We think the court also erred in decreeing in favor of the insurance companies. The insurance written was for the sole and exclusive benefit of the owners of the steamboat, and in no wise inured to the benefit of the ship or maritime lienholders.

In The John T. Moore, 3 Woods, 61, 68, Fed. Cas. No. 7,430, the late Mr. Justice Woods dealt with the question as follows:

"Exception is also taken to the report of the master because he rejected claims of certain insurance companies for premiums on certain policies of insurance taken on the John T. Moore by her owners. I know of no law which gives a lien upon a vessel for the premium for an insurance taken on her by her owners for their own benefit. It is a contract with the owner for his own benefit. It does not aid the vessel. In case of loss, the maritime liens upon the vessel are displaced, and do not follow the insurance money. The money goes to the owner, for his own benefit, and not to the lienholder, who may insure his own interest. Thayer v. Goodale, 4 La. 221; Steele v. Insurance Co., 17 Pa. St. 290; Turner v. Stetts, 28 Ala. 420; White v. Brown, 2 Cush. 412; Stilwell v. Staples, 19 N. Y. 401; Slark v. Broom, 7 La. Ann. 337. The master was right, therefore, in deciding that the claims of the insurance company for premiums were no lien upon the vessel."

The authorities cited are to the effect that lienholders receive no benefit from the insurance, and the learned justice probably considered that paragraph 10, art. 3237, Civ. Code La., referred to and included only premiums due for insurance beneficial to lienholders, freighters, and others relying on the credit of the vessel. The record shows that the insurance companies accepted negotiable notes for the premiums, and each policy shows that the consideration to the insurance company had been received. In such a case, the supreme court of Louisiana denied the privilege. Tiner v. The Bride, 5 La. Ann. 756.

When the steamboat Liberty was seized, September 22, 1898, there was on board a piano, which had been placed there by the Medine Music Company. The boat not having been bonded, on October 12, 1898, a writ of venditioni exponas was issued, and on the same day the Medine Music Company presented its claim to the court for the piano, and asked to be allowed to bond the same, pending the final determination of its rights. This application was granted, and thereupon, on October 20th, and before the steamboat Liberty was sold, the piano was removed from the steamboat. The decree of the dis-

trict court awards the piano to the Medine Music Company, and directs the cancellation of its bond. This ruling is assigned as error by Learned, Rumble, and Wensel, holders of the mortgage on the steamboat Liberty, and interveners for remnants, and also by Rumble and Wensel, appellants, purchasers of the steamboat at the sale made by the marshal. The facts appear to be as follows:

"The Medine Company made an arrangement—a verbal agreement—with Capt. Aucoin, of the Liberty, whereby it placed a piano on the boat, and took to its store the one then on board. Mr. Medine, in his testimony, says that he made this arrangement as an advertisement for his company, and that it was well understood between him and the captain that the piano he put upon the boat and the one he took therefrom and brought to his store were to be held at the risk of the respective owners thereof; that he could have taken his piano off the boat at any time, and returned the one taken off her, the captain having a like privilege. The Medine store, with the boat's piano stored in it, having been destroyed by fire, it cannot be restored. Capt. Aucoin corroborates Mr. Medine's evidence in a measure. It is in evidence that there was no sign upon the piano to indicate to a third person, or any one visiting the boat, or any creditor, that it was not part of the furniture thereof."

From these facts, it is clear that the Medine Music Company never parted with its ownership of the piano, and the owners of the boat never bought the same. The mortgage never covered the piano, as it never formed a part of the property of the boat, nor constituted any necessary part of her tackle, apparel, or furniture. See 1 Pars. Shipp. & Adm. p. 78, and notes. Besides, the mortgage creditors are before the court intervening for remnants only, and it can hardly be contended in their behalf that the court should go outside, and find remnants for them. As the piano did not belong to the owners of the boat, and was not on the boat at the time it was sold, but had been withdrawn by the order of the court before the sale, and as it constituted no necessary part of the boat's tackle, apparel, or furniture, we are clear that the purchasers of the steamboat acquired no right to, or interest in, the piano in question.

For these reasons the decree of the district court is reversed, and the cause is remanded, with instructions to the district court to dismiss the libels of intervention of J. P. McElroy, C. A. Healy, as subrogee, the Insurance Company of North America, St. Paul Fire & Marine Insurance Company, the Greenwich Insurance Company, and the Providence Washington Insurance Company, with costs, and thereupon distribute the proceeds of the steamboat Liberty remaining in the registry of the court among the intervening libelants, appellees in this case, who have proved their claims as furnishers of supplies to the steamboat Liberty within six months prior to her seizure, the same to be distributed pro rata, if there are not enough funds in the registry to pay in full, and, if any balance be left after paying the material men, to award the same to Learned, Rumble, and Wensel, mortgage creditors of the steamboat Liberty. The costs of this appeal are to be paid, one-half by Rumble and Wensel, appellants, who take nothing by their appeal, and the other half by the intervening libelants, appellees, whose libels are dismissed, to wit, J. P. McElroy, C. A. Healy, the Insurance Company of North America, St. Paul Fire & Marine Insurance Company, Providence Washington Insurance Company, and the Greenwich Insurance Company.