LAND, J.
The receiver filed an account of his gestión, to which numerous oppositions were filed. Carter Bros, and W. G. Coyle & Co. appealed from the judgment of homologation. The main contention of Coyle & Co. is as to an item of $1,400, which the decree ordered to be deducted from the amount of their undisputed privileged claim against the steamer Gem for coal furnished.
It appears that the receiver inserted a “note” in his account as follows, to wit:
“A libel was filed in the United States Dis triet Court by W. G. Coyle & Co. as owners of certain tugs, joined in by the crews of such tugs, claiming salvage against steamer Gem in sum of $1,400. * * * At sale by sheriff in this case, counsel for W. G. Coyle & Co. publicly announced from the crier’s stand that whoever purchased the steamer Gem purchased it subject to the $1,400 claim for salvage, and by reason of such announcement caused said vessel to be sold at a price far below what she would otherwise have brought. Subsequently and without seizure of said steamboat by the marshal, the above-mentioned suit was discontinued and Coyle- & Co. satisfied.”
In bis judgment the judge a quo said:
“In connection with the steamer Gem, the claim of W. G. Coyle & Co. must be noticed. They have received $1,400 from the purchase price of this vessel under circumstances detailed in the evidence. It matters not by what process a creditor obtained for himself any part of the funds which ought to fall into a liquidation or-an insolvency. He must be held to account for the same in any distribution that takes place among the creditors. For these reasons I direct the expert to deduct from the amount of their claim upon the steamer Gem the aforesaid sum -of $1,400.”
During the receivership Coyle & Co., as owners of two tugboats, in conjunction with their officers and crews, filed a libel suit in United States District Court against the steamer Gem on a salvage claim for $1,400. A warrant of arrest issued, but could not be executed while the vessel was in the hands of the state receiver. The Gem,, with other steamers, were ordered to be sold by the judge a quo in the receivership proceedings. On the day of sale those who were present were notified by the attorney of Coyle & Co. of the pendency of the libel proceedings in the United States District Court, and that the steamer Gem would be seized to satisfy the claim for salvage. A deputy marshal, with the warrant, was present at the sale, with instructions to serve the same as soon as the adjudication should be made. The vessel was sold for $2,600. There was an agreement or understanding between the purchaser and Coyle & Co. that, no matter what the former paid for the boat, he should also pay the salvage claim and thereupon the boat should be released; otherwise, the steamer would be seized Dy the marshal. The amount of $1,400 was paid by the purchaser and was distributed in the proportion of five-eighths to the owners and three-eighths to the officers and crews of the tugs which had rendered the salvage services. No further proceedings were had in the libel suit before the United States District Court.
That salvage services were rendered by Coyle & Co. and associates to the steamer Gem, and that they had an admiralty lien to secure whatever amount might be due them, is not disputed. It is equally clear that the state court could not adjudicate or pass upon the validity or extent of the maritime lien-claimed. Hence the necessity of a resort to the court of admiralty, with the view of enforcing the lien by seizure as soon as the *449 vessel should pass out of the possession of the receivers.
The state court could only sell the right of the shipowner subject to maritime liens, and such a title is of little or no market value. Moran v. Sturges, 154 U. S. 281, 14 Sup. Ct. 1019, 38 L. Ed. 981 et seq.
The steamer Gem was sold subject to maritime liens, and the purchaser paid the price of the adjudication to the receiver. The money paid by the purchaser to Coyle & Co. was over and above his bid, and was not due to the insolvent estate. The title to the vessel passed to the purchaser, 'subject to maritime liens, and the onus was on him to secure, as best he could, their release or discharge. The purchaser elected to pay, instead of to litigate. He acted within his rights, and the insolvent estate cannot complain as its interest in the vessel had been divested by the sale.
There is no issue of fraud before the court either as to the sale or as to the salvage claim. The only issue presented by the record is whether Coyle & Co. received $1,400 belonging to the insolvent corporation. This question must be answered in the negative, and the judgment below must be reversed in so far as it charges Coyle & Co. with the amount.
The only other issue raised by Coyle & Co. on appeal is thus stated in brief of counsel:
“In the loss of $4,974.99 is put cash advanced by Chas. W. Drown $1,828.01. This item is opposed. It is not proved by the testimony of one witness and corroborating circumstances.”
Capt. Drown acted as manager for the receiver, and in the operation of the boats advanced money for a number of purposes. This item will be considered later.
We pass to the consideration of the opposition of Carter Bros.
These opponents claim a vendor’s lien and privilege on the proceeds of the sale of the steamboat Red River and the barge Silas. On October 7,’ 1902, Henry H. Carter and other co-owners sold the Red River to the Red River Line for $11,000, purporting to have been paid in lawful money of the United States, ,the receipt of which was acknowledged, the bill of sale, and reciting that the vendors were “fully satisfied, contented and paid.” On the same day the same vendors sold to the Red River Line the barges Silas and lola, with all their appurtenances, for $2,000 “cash in hand paid,” as stated in the receipt.
On the same day Carter Bros, received from the Red River Line its promissory note for $4,334, payable 18 months after date, with interest at the rate of 6 per cent, per annum from date until final payment.
It seems to be conceded as a matter of fact that this note represents the unpaid portion of the price of the steamboat Red River and the barges Silas and lola, but it is contended that the lien was waived or extinguished by prescription.
Privileges against ships, steamboats, and other vessels are prescribed by six months. Rev. Civ. Code, art. 3237. Under article 3204 of the Civil Code of 1825, such privileges were prescribed by 60 days. The vendor’s privilege or lien on vessels is subject to this prescription. Bell v. Insurance Co., 5 Rob. 436, 39 Am. Dec. 542; Scott v. His Creditors, 3 La. Ann. 41; Lee v. His Creditors, 2 La. Ann. 599.
The prescription is not of the debt, but of the privilege, and the delay commences to run from the date of the contract, and not from the maturity of the debt. See Violett v. Fairchild, 6 La. Ann. 196. In that case the court said:
“Conduit also claims a privilege, on the ground that, when the boat was sold, 60 days had not elapsed since the maturity of any of the notes which he received in payment from C. H. Faix’child. We think this gx’ound is untenable.
“The privilege was created by the contract and expired 60 days after its date. Conduit in selling on time virtually abandoned the privilege and dealt exclusively upon the credit of Fairchild, as the other creditors did who suffered *450 the 60 days to expire without enforcing their claims.
“They are all in the same situation.”
In Blanehin v. Steamer Fashion, 10 La. Ann. 49,, it was held that a privilege on a steamboat “runs out, as against other creditors, in 60 days.” Hence no plea of prescription is necessary, and the creditor must, at his peril, assert his privilege within the statutory period of prescription. In the case at bar it may also be said that there was a novation; the note having been received as cash. 5 Rob. 436, 39 Am. Dec. 542; Cammack v. Griffin, 2 La. Ann. 175.
Our conclusion on this question leaves Carter Bros, in the position of ordinary judgment creditors, who have filed what may be termed a universal opposition to the provisional account of the receiver. With so many issues before the.court, it is not surprising that on some of them the evidence should fall short of that reasonable certainty which the law demands. -As the decree appealed from reserves the right of the opponents to demand of the receiver an account of his administration from the date of his appointment, the question before the court is one rather of partial distribution than of final accounting.
Under the proposed distribution the mortgage creditors receive but little. Several objections, technical in character, have been made to the allowance of their claim evidenced by notes. It is urged that no resolutions of the board of directors authorizing such mortgage were filed in evidence, and that the mortgagees were directors of the insolvent corporation. We find only the notes and two acts of mortgage in the record. Under the circumstances we deem it best to reopen the ease as to these mortgage claims.
It appears that Ohas. W. Drown, manager for the receiver, advanced money from time to time to pay necessary expenses incurred in running the boats. He testified positively to such advances, and is corroborated in a general way- by the receiver and his bookkeeper. We understand from the evidence that the credits on the cash account show that the manager made advances to the amount claimed.
The claim for $1,100 under the head of receiver’s certificates really represent an approximate balance due for insurance authorized by the court.
The fact that the operation of the boats proved a losing venture furnishes no good reason for denying compensation to the receiver. If he has been guilty of mismanagement that has caused loss, the matter can be urged by opposition to his final account. Counsel for opponent in his brief refers generally to a number of items, which were opposed. The brief should have set forth the specific objections to such items, so as to enable this court to intelligently consider them. The presumption is that they were properly allowed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed in so far as it directs the deduction of $1,400 from the claim of W. G. Coyle & Co., and in so far as it allows the claims of mortgage creditors, which latter are reserved for future adjudication, and it is further ordered and decreed that said judgment as thus amended be affirmed, costs of appeal to be paid by the receivership.