STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**11-222 consolidated with 11-223, 11-224**


**MAXUM SERVICES, INC.**

**VERSUS**

**ISLAND BOATS, INC., ET AL.**


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 114114 C/W 114303 C/W
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


                                                          **REVERSED.**

**Michael W. Campbell**
**Caffery, Oube, Campbell & Garrison, LLP**
**P.O. Drawer 12410**
**New Iberia, LA  70560**
**(337) 232-6581**
**Counsel for Defendant/Appellee:**
**Gulfmark Americas, Inc.**

**N. Jerae Carlson**
**Strasburger & Price, LLP**
**1401 McKinney St., Suite 2200**
**Houston, TX 77010**
**(713) 951-5600**
**Counsel for Defendant/Appellee:**
**Gulfmark Americas, Inc.**

**Thomas R. Juneua, Sr.**
**Tonya R. Smith**
**Juneau Law Firm**
**P. O. Box 51268**
**Lafayette, LA 70505-1268**
**(337)269-0052**
**Counsel for Plaintiff/Appellant:**
**Maxum Services, Inc.**

**Joseph A. Tabb**
**Aloise, Baudry, & Baudy, LLC**
**P.O. Box 766**
**Franklin, LA 70538**
**(337) 828-0454**
**Counsel for Plaintiff/Appellant:**
**Estes Refractory & Insulation of Louisiana, Inc.**

**PICKETT, Judge.**

In these consolidated cases, two companies that provided materials and/or labor for the construction of a vessel appeal the trial court's grant of summary judgment dismissing claims they asserted against the vessel. Finding the defendants failed to prove they were entitled to summary judgment, we reverse the judgment.

## FACTS

Gulfmark Americas, Inc. (Gulfmark)[1] entered into a construction contract with Island Boats, Inc. (Island) for the construction of two 170-foot water jet crew/supply vessels. Estes Refractory & Insulation of Louisiana, Inc. (Estes) provided labor and materials, and Maxum Services, Inc. (Maxum) provided labor to Island for the construction of one of the vessels, the M/V Swordfish. Gulfmark took possession of the vessels on February 22, 2009. Island did not pay Estes or Maxum for their services and filed for bankruptcy. On April 22, 2009, Maxum filed suit against Gulfmark and Island, seeking in part to have the privilege La.Civ.Code art. 3237(8) provides material men and workmen employed in the construction of a vessel recognized on the M/V Swordfish. Estes thereafter filed suit on May 22, 2009, seeking recognition of the same privilege in its favor on the M/V Swordfish.

Gulfmark filed peremptory exceptions of prescription and no cause of action which were dismissed. Gulfmark then had the suits consolidated, after which it filed a motion for summary judgment seeking to have Estes' and Maxum's claims dismissed. The trial court denied the motion for summary judgment. Gulfmark

---

[1]The contract was actually between Rigdon Marine Holdings, LLC and Island; however, Rigdon is now known as Gulfmark.

re-urged the motion, however, and the trial court granted it. Estes and Maxum appealed the trial court's judgment.

## ASSIGNMENTS OF ERROR

On appeal, Estes and Maxum assign six errors with the trial court's judgments granting summary judgment in Gulfmark's favor:

1. The trial court erred in determining that prior jurisprudence interpreting Civil Code Articles 3237-3245 does not apply.

2. The trial court erred in distinguishing between steamships and motor vessels.

3. The trial court erred in determining that there was no genuine issue of material fact preventing summary judgment.

4. The trial court erred in determining that the M/V Swordfish made a voyage as contemplated by Civil Code Article 3237(8).

5. The trial court erred in determining that Appellants do not have a privilege on the price of the vessel.

6. The trial court erred in dismissing Appellants' claims against Gulfmark.

## SUMMARY JUDGMENT

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *La. Safety Ass'n of Timbermen-Self Insurers Fund v. La. Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof is on the movant to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. *Id.* Once the movant has met his initial burden of proof, the burden shifts to the adverse party "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial." *Id*.

## DISCUSSION

Estes and Maxum each seek to enforce a privilege provided by La.Civ.Code art. 3237(8) to material men and workmen who provide materials and labor for the construction of ships and vessels. A privilege is "stricti juris" and "can be claimed only for those debts to which it is expressly granted." La.Civ.Code art. 3185.

Article 3237, previously Article 3204, provides in pertinent part:

> The following debts are privileged on the price of ships and other vessels, in the order in which they are placed:
>
> . . . .
>
> 8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never made a voyage; and those due to creditors for supplies, labor, repairing, victuals, armament and equipment, previous to the departure of the ship, if she has already made a voyage.
>
> . . . .
>
> The term of prescription of privileges against ships, steamboats and other vessels shall be six months.

A material man or workman can enforce the privilege provided by Article 3237 against a vessel after it has been sold to a voluntary purchaser if the vessel is in port *and* it has not made a voyage "in the name and at the risk of the purchaser." La.Civ.Code art. 3242. If the vessel has made a voyage before the privilege is

3

asserted, the privilege is "lost and extinct." La.Civ.Code art. 3243. "Voyage" is defined in Article 3245 as when a "ship" has departed from one port and arrived at another or been out more than sixty days without returning to the same port, or as when a ship has been out more than sixty days without any claim for a privilege being asserted.

Gulfmark urges that the privileges provided to Estes and Maxum by Article 3237 were extinguished when they filed suit because the M/V Swordfish made numerous voyages before that time. Estes and Maxum contend Gulfmark is not entitled to summary judgment because the evidence submitted by Gulfmark in support of the motion is insufficient to warrant summary judgment in light of jurisprudence applying Article 3237. They argue the M/V Swordfish did not make a voyage before they filed suit and they filed suit within six months of providing material or labor to it; therefore, summary judgment is inappropriate.

*Jurisprudence*

The plaintiffs assert that a long line of jurisprudence which held, pursuant to former Article 3204, now Article 3237, that prior to 1858, vessels trading on the inland waters of Louisiana and the Mississippi River were not making voyages within the "sense of the statute." *Learned v. Brown,* 94 F. 876, 881 (5th Cir. 1899) (*rev'd on other grounds*). In those cases, material men and laborers had sixty days to file liens against a vessel. *Id.*; *Shirley v. Fabrique*, 15 La. 140 (1840). In 1858, Article 3204, now Article 3237, was amended to provide: "The term of prescription of privileges against ships, steamboats and other vessels shall be six months." After passage of this amendment, state and federal courts held that material men and laborers had six months to assert the privilege provided in Article 3237 on vessels that sailed on inland waters, e.g., steamboats. *In Re Red River Line*, 115 La. 867, 40 So. 250 (1905); *Learned*, 94 F. 876.

4

Citing *Millaudon v. Martin*, 6 Rob. 534 (La.1844), Estes and Maxum contend that a vessel must sail on the sea to make a voyage. This argument has no merit, though, as counsel for the plaintiff in *Millaudon*, not the court, stated the definition of voyage was "the passage of a ship upon the sea and from one port to another." Indeed, the court did not consider whether a voyage had been made.

We find the jurisprudence does not require a vessel to sail "on the sea" to have made a voyage; nevertheless, we do find that when a vessel sails only within the inland waters of Louisiana, material men and laborers have six months to assert the privilege provided by Article 3237. *Shirley*, 15 La. 140; *Learned*, 94 F. 876. Maxum and Estes argue on one hand that jurisprudence governs this matter but argue on the other hand that the plain language of the 1858 amendment to Article 3204, now Article 3237, governs our determination, i.e., the applicable term of prescription here is six months. They cannot have it both ways. The pre-1858 jurisprudence relied upon by Estes and Maxum led to the amendment, and post-amendment jurisprudence continued to hold that the privilege ceased once a vessel made a voyage. *See Graeme Spring & Brake Serv., Inc. v. De Felice* 98 So.2d 314 (La.App. Orl. 1957); *Learned*, 94 F. 876. Therefore, we will consider whether Gulfmark proved it made a voyage beyond the inland waters of Louisiana as contemplated by La.Civ.Code arts. 3237 and 3245.

### Did the M/V Swordfish Make a Voyage Before Plaintiffs Filed Suit?

Under the facts of this case, the applicable definition of voyage hinges on the term "port," and we must decide whether the M/V Swordfish departed one port and arrived at another port outside the inland waters of Louisiana. Inland waters have been determined to extend three miles from the Louisiana coastline. *U.S. v. La.*, 394 U.S. 11, 89 S.Ct. 773 (1969). "Port" is not defined in the Civil Code. Therefore, we look to other sources to determine its definition.

Black's Law Dictionary 5th & 6th Editions 1979, 1990, defines "port" as:

A place for the loading and unloading of the cargoes of vessels, and the collection of duties or customs upon imports and exports. A place, either on the seacoast[, great lakes,][2] or on a river, where ships stop for the purpose of loading and unloading cargo, or for purpose of taking on or letting off passengers, from when they depart, and where they finish their voyage. A port is a place intended for loading or unloading goods; hence includes the natural shelter surrounding water, as also shelter water produce by artificial jetties.

The Merriam-Webster Online Dictionary defines "port" as "a place where ships may ride secure from storms" and "a harbor town or city where ships may take on or discharge cargo." Similarly, Dictionary.com defines "port" as "a city, town, or other place where ships load or unload"; "a place along a coast in which ships may take refuge from storms; harbor"; "any place where persons and merchandise are allowed to pass, by water or land, into and out of a country and where customs officers are stationed to inspect or appraise imported goods"; or "a geographical area that forms a harbor."

Gulfmark supported its motion for summary judgment with an affidavit by its Director of Technical Service, James R. Whitley. Mr. Whitley averred in his affidavit that the Swordfish "made its maiden voyage . . . traveling from Amelia, Louisiana to Port Fourchon, Louisiana" and, after being chartered, "made the first of many voyages from Port Fourchon, Louisiana to the EW-998 field in the Gulf of Mexico and back." Mr. Whitley's affidavit further states the M/V Swordfish carried cargo and/or crew to specific points throughout the Louisiana Gulf Coast region. Logs for the M/V Swordfish attached to Mr. Whitley's affidavit show departure and arrival times as well as destinations. The logs also contain remarks which are apparently intended to show the M/V Swordfish's activities during those

---

[2] The bracketed term does not appear in the 1979 Edition's definition of "port."

6

times; however, unexplained abbreviations are used in some cases, e.g., O/L and B/L.

As argued by Estes and Maxum, neither Mr. Whitley's affidavit nor the logs attached thereto show that the waters in which the EW-998 field is located are not inland waters such that the M/V Swordfish was not engaged in inland navigation during the time in question. Moreover, Mr. Whitley's affidavit and the attachments thereto do not show what the EW-998 field is or that it satisfies the definition of port. The same is true of Amelia and Port Fourchon. In other words, the documents do not establish that the M/V Swordfish made a voyage prior to Estes and Maxum filing suit. Accordingly, we find the trial court erred in granting summary judgment dismissing Estes' and Maxum's claims.

## DISPOSITION

The judgment of the trial court granting summary judgment in favor of Gulfmark Americas, Inc. is reversed. All costs are assessed to Gulfmark Americas, Inc.

**REVERSED.**