226 So.2d 779 (1969)
John ISTRE, Plaintiff-Appellant,
v.
DIAMOND M. DRILLING COMPANY et al., Defendants-Appellees.
No. 2730.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1969.
Dissenting Opinion June 16, 1969.
On Rehearing September 24, 1969.
Dissenting Opinion on Rehearing September 26, 1969.
J. Minos Simon and John Rixie Mouton, Lafayette, for plaintiff-appellant.
Caffery, Duhe & Davis, by W. Eugene Davis, New Iberia, Voorhies, Labbe, Fontenot, Leonard & McGlasson, by W. Gerald Gaudet, Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendants-appellees.
Before TATE, FRUGE and HOOD, JJ.
*780 FRUGE, Judge.
Plaintiff, John Istre, filed suit seeking recovery for personal injury damages allegedly resulting from an accident which occurred on or about November 29, 1965, while he was working as a member of the crew of a submersible drilling barge situated in navigable waters in St. Mary Parish, Louisiana.
Plaintiff named the following defendants, whose participation in the activities giving rise to the accident sued upon, insofar as is pertinent herein, are claimed to be as follows:
Kilroy Drilling and Production Company ("Kilroy")plaintiff's employer and owner of the drilling barge;
St. Paul Marine and Fire Insurance CompanyKilroy's insurer;
Diamond M. Drilling Companythe successor of Kilroy;
Dia-Log Company ("Dia-Log")the supplier of equipment and personnel for a "fishing tool operation" being conducted aboard the drilling barge at the time of the accident;
Travelers Insurance CompanyDia-Log's insurer;
Wilson Supply Company ("Wilson") the furnisher of personnel for the operation;
American General Insurance Company Wilson's insurer;
Southern Natural Gas Companythe owner of the lease and well at the site of the accident.
The suit against Kilroy, as employer, and its successor Diamond M., states a cause of action for negligence under the Jones Act (46 U.S.C. § 688), and for breach of the warranty of seaworthiness under the General Maritime Law. As to the other defendants, plaintiff concedes that they are neither his employers nor the owners of the barge and that therefore his suit against them is based solely upon negligence.
The suit against all defendants was filed in the Sixteenth Judicial District Court for the Parish of Iberia on December 21, 1967, more than two years after the date of the alleged accident.
Defendants, Dia-Log, its insurer, Wilson, its insurer, and Southern Natural Gas, filed Exceptions of Prescription, asserting that the claim against them was barred by the prescription of one year under L.S.A.-C.C. Article 3536. Plaintiff countered, asserting that under the admiralty doctrine of laches, the suit was timely.
The trial court, after hearing, sustained the exceptions, holding that Article 3536 controlled, and dismissed plaintiff's suit as to these defendants. From this ruling the plaintiff appeals.
ISSUE
The only issue to be decided on this appeal is whether the suit against appellees is barred by prescription, or, in maritime terminology, whether it is barred by laches. In its simplest form, the issue presented by the Exceptions of Prescription filed by the appellees, can be stated as follows: What is the appropriate limitation period to be applied to the filing of a suit in a State court by a seaman seeking personal injury damages against a non-employer defendant based upon General Maritime Law (the employer being a co-defendant in the suit under a Jones Act and General Maritime claim)?
The determination of the appropriate limitation period to be applied is somewhat more complex than might be assumed. The background to the general problems of administering the traditional General Maritime Law has been aptly termed "The *781 Devil's Own Mess,"[1] and the particular type of maritime operations involving workers who do not ordinarily sail the high seas, such as this plaintiff, has been called an "ambiguous, amphibious area."[2] These problems apparently extended, at least in the past, even with regard to the application of admiralty's doctrine of laches.
BACKGROUND
In order to place the issue in basic perspective, we believe it appropriate to sketch out very briefly the historical background of the issue.
Prior to 1920, the only basis for recovery of personal injury damages by a seaman against his employer was the traditional General Maritime Law.[3] This action against the seaman's employer, aside from the maintenance and cure claim, was for breach of the warranty of seaworthiness, a species of liability without fault[4] and, theoretically at least, the seaman had no recourse against the employer under General Maritime Law for damages resulting from the employer's negligence but not constituting unseaworthiness.[5]
The General Maritime Law includes personal injury claims by a seaman, including "vicarious" seamen[6], against a "third party" (non-employer) shipowner or shipowner pro hac vice[7] for breach of the warranty of seaworthiness in some circumstances[8], and against a third party, whether or not he is the shipowner, for negligence.[9]
Non-seamen derive no direct benefit from the Jones Act nor (except for "vicarious" seamen) from the warranty of seaworthiness, but they have a maritime personal injury action against any party negligently causing them injury in a maritime situation,[10] which is the same action that seamen have against negligent "third parties" who are neither their employers and who do not owe them the warranty of seaworthiness.
In the case at hand, we have a seaman seeking personal injury damages from his employer on a combined Jones Act and General Maritime Law claim, and against three "third parties" who are not shipowners or shipowners pro hac vice, but are alleged to be negligent along with the employer, on a General Maritime Law claim.

THE ADMIRALTY DOCTRINE OF LACHES
The admiralty doctrine of laches has always been the time limitation applied in Federal courts to the filing of suits for personal injuries under the General Maritime Law.[11] This doctrine has two requirements for its application as a bar to the maritime claim, namely, inexcusable delay and prejudice from the delay to the party asserting the defense of laches.[12]
*782 THE JONES ACT
In 1920, Congress enacted the Jones Act (46 U.S.C. § 688) which, basically, extended the seaman's right against his employer to actions for recovery of personal injury damages arising from the employer's negligence. The time limitation for the filing of a Jones Act suit is now three years.[13]
It has been determined that a final decision in a Jones Act suit not combined with a claim under the General Maritime Law is nevertheless conclusive upon a later suit under the General Maritime Law[14] against the employer on the same accident. This determination entailed the subsequent holding that the minimum time limitation for the filing of a suit by a seaman against his employer for personal injury damages under the General Maritime Law combined with a Jones Act claim is three years, for, to allow a shorter limitation in such a suit would be to abrogate the right of a seaman to file a Jones Act suit at any time within three years from the date of the accident.[15]
This also encompassed the holding that when such a suit is brought in a State court under the "saving to suitors" clause, the State court may not impose its own statute of limitations in such a suit if the statute calls for a shorter period than three years.[16]
THE "ANALOGOUS STATUTE" RULE
A complicating factor to the application of the doctrine of laches has resulted from the jurisprudential adoption of a presumption of laches if the "analogous" statutory limitation period has expired, and a presumption of no laches if the "analogous" statutory limitation period has not elapsed.[17] The difficulty arises in determining which statute of limitation is analogous.
POSITIONS OF THE PARTIES
Plaintiff argues that the decisions cited and discussed in his brief[18] call for the application of the admiralty doctrine of laches herein rather than the mechanical imposition of any statutory limitation period as the court below ruled, and that the three year period of the Jones Act is the analogous statutory limitation to be used as the reference guide; or, regardless of the properly analogous statute of limitation, that plaintiff's suit against appellees is not barred by laches as appellees have not even claimed to have been prejudiced by any delay.
Kilroy, although not directly involved in the Exceptions of Prescription filed by its co-defendants, is interested in the resolution of this issue (presumably for the sake of retaining company in defending the suit and in possibly sharing the payment of any judgment which might be rendered herein), and it has filed an amicus curiae brief also supporting the proposition that *783 plaintiff's suit against defendants-appellees is not barred by laches.[19]
On the other hand, the briefs of the defendants-appellees, collectively, cite us to other authorities[20] which, it is urged, call for the application of L.S.A.-C.C. Article 3536, providing a one year prescriptive period; or that the Louisiana statute is the appropriate statute of reference for the application of the doctrine of laches if that doctrine is applicable, which they deny. Additionally, defendants-appellees take issue with the interpretation placed by plaintiff and Kilroy upon the declarations of the authorities cited in their respective briefs.
It would require an even longer dissertation than is hereinafter set forth to discuss at length all of the points and interpretations contained in all of the briefs filed and in the cases cited therein as well as the decisions cited and discussed, in turn, in those cases. We will therefore discuss only the principal points raised.
JURISDICTION
The United States Constitution, Article III, Section 2, provides that the judicial power of the United States extends to "all cases of admiralty and maritime jurisdiction." Article I, Section 8, confers upon Congress the power to make all laws necessary to carry into execution such jurisdictional power.
Congress has provided that the Federal District Courts have original, exclusive jurisdiction of admiralty or maritime cases, but such suits may, somewhat paradoxically, be brought in State courts under the "saving to suitors" clause:
"The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize."
28 U.S.C. § 1333.
It appears to be the prevailing view that admiralty law principles, including the admiralty doctrine of laches, should be applied to maritime causes of action regardless of whether the suit is brought in a Federal court or in a State court (Annotation, Maritime InjuriesTime Limitations, 91 A.L.R.2d 1417, 1427).
In Giddens v. Isbrandtsen Company (4th Cir., 1966) 355 F.2d 125, 126, it is observed that: "This is the law of the sea, governing irrespective of the form or forum of the suit. Larios v. Victory Carriers, Inc. (2nd Cir., 1963), 316 F.2d 63, 65; See, Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 531, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L. Ed.2d 550 (1959)."
*784 As we are a State court applying a federally created right, the declarations of the United States Supreme Court in the converse situation in Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 108-110, 110, 65 S.Ct. 1464, 1469-1470, 89 L.Ed. 2079, are appropriate:
"Here, we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a non-resident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic. But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
"And so the question is not whether a statute of limitations is deemed a matter of `procedure' in some sense. The question is whether such a statute concerns merely the manner and the means by which a right to recover, as recognized by the State, is enforced, or whether such statutory limitation is a matter of substance in the aspect that alone is relevant to our problem, namely does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?
It is therefore immaterial whether statutes of limitation are characterized either as `substantive' or `procedural' in State court opinions in any use of those terms unrelated to the specific issue before us. Erie R. Co. v. Tompkins was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and Federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. And so, putting to one side abstractions regarding `substance' and `procedure,' we have held that in diversity cases the federal courts must follow the law of the States as to burden of proof, Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196, as to conflict of laws, Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, as to contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 482, 87 L.Ed. 645, 144 A.L.R. 719. And see Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394. Erie R. Co. v. Tompkins has been applied with an eye alert to essentials in avoiding disregard of State law in diversity cases in the federal courts. A policy so important to our federalism must be kept free from entanglements with analytical or terminological niceties.
Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law. See Mogan, Choice of Law Governing Proof (1944) 58 Harv.L.Rev. 153, 155-158. The fact that under New York law a statute of limitations might be lengthened or shortened, that a security may be foreclosed *785 though the debt be barred, that a barred debt may be used as a set-off, are all matters of local law properly to be respected by federal courts sitting in New York when their incidence comes into play there. Such particular rules of local law, however, do not in the slightest change the crucial consideration that if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery."
In this connection, the Louisiana Supreme Court in Rojas v. Robin, 1956, 230 La. 1096, 90 So.2d 58, 61-62, 65 A.L.R.2d 1218, ruled:
"Article III, Section 2, of the Federal Constitution extends the judicial power of the United States to all cases of admiralty and maritime jurisdiction, and Article I, Section 8, confers upon the Congress the power to make all laws necessary to carry into execution the foregoing powers. Pursuant to these powers the Congress gave to the federal district courts exclusive original jurisdiction of civil cases of admiralty and maritime jurisdiction, saving to suitors `all other remedies to which they are otherwise entitled.' See 28 U.S.C.A. Sec. 1333. As this is an action in personam on a maritime contract, and is not a proceeding in rem, the state court has concurrent jurisdiction with the federal district courts. See Johnson v. Chicago & Pacific Elevator Co., 119 U.S. 388, 7 S.Ct. 254, 30 L.Ed. 447; Madruga v. Superior Court of State of Cal., 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290, Benedict on Admiralty (6th Ed. 1940) v. 1, c. IV. However, where a state court has jurisdiction of a suit involving a maritime contract, the state court must follow substantive maritime law. Madruga v. Superior Ct., supra; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086."
In Macomber v. De Bardeleben Coal Company, 1942, 200 La. 633, 8 So.2d 624, 630, a case involving the application of the Jones Act and General Maritime Law, the Louisiana Supreme Court ruled that:
"* * * His failure to do so constituted negligence under the Jones Act and the jurisprudence of the federal courts thereunder (Kirincich v. Standard Dredging Co., 3rd Cir., 112 F.2d 163, and Tompkins v. Pilots Association for Bay and River Delaware, D.C., 32 F.Supp. 439), by which our courts are bound. Saloy v. City of New Orleans, 33 La.Ann. 79; Jones v. Kansas City Southern Railway Co., 143 La. 307, 78 So. 568; Walker v. Iowa Central Railway Co., D.C., 241 F. 395; Engfors v. Nelson S. S. Co., 131 Or. 108, 280 P. 337; and other authorities too numerous to mention." (8 So.2d 624, 628.)
"* * * This is in keeping with the rules of the federal courts in admiralty cases, as will be found expressed in the case of Lillig v. Union Sulphur Company, 9 Cir., 87 F.2d 277, 278: `Although an appeal in an admiralty case is regarded as a trial de novo, the findings of the trial court would not be disregarded by the appellate court where supported by competent evidence. Where the findings are made on conflicting evidence and the trial court has seen and heard the witnesses and has had an opportunity of judging their credibility, the findings are entitled to great weight and should not be upset, except for manifest error or unless it is shown that they are clearly wrong.'"
It might be, then, that under the United States Constitution and Federal laws thereunder, as well as the cases discussed herein, we have no choice in the matter, but in view of our ultimate decision herein, which we have reached on our own, it is not necessary to decide whether we could permissibly impose Louisiana's one year prescriptive statute in this general maritime case.
*786 APPLICATION OF THE ADMIRALTY DOCTRINE OF LACHES IN A STATE COURT
If the contention of defendants-appellees, that Louisiana's one year limitation should apply in this maritime case, were correct, then presumably the one year limitation should apply in a Jones Act suit, and in a General Maritime personal injury suit combined with a Jones Act claim, as these are all suits involving admiralty. However, the United States Supreme Court has ruled in Engel v. Davenport, 1926, 271 U.S. 33, 38-39, 46 S.Ct. 410, 412-413, 70 L.Ed. 813, as follows:
"This brings us to the question whether a suit brought in a State court to enforce the right of action granted by the Merchant Marine Act (Jones Act) may be commenced within two years (now 3 years) after a cause of action accrues, or whether a State statute fixing a shorter period of limitation will apply. Section 6 of the Employers' Liability Act provides that `no action shall be maintained under this act unless commenced within two years (now 3 years) from the day the cause of action accrued.' This provision is one of substantive right, setting a limit to the existence of the obligation which the Act creates. Atlantic Coast Line R. Co. v. Burnette, 239 U.S. 199, 201, 36 S.Ct. 75, 60 L.Ed. 226. And it necessarily implies that the action may be maintained, as a substantive right, if commenced within the two years * * *
We conclude that the provision of Section 6 of the Employers' Liability Act relating to the time of commencing the action, is a material provision of the statutes `modifying or extending the common law right or remedy in cases of personal injuries to railway employees' which was adopted and incorporated in the Merchant Marine Act. And, as a provision affecting the substantive right created by Congress in the exercise of its paramount authority in reference to the maritime law, it must control in an action brought in a state court under the Merchant Marine Act, regardless of any statute of limitations of the State. See Arnson v. Murphy, 109 U.S. 238, 243, 3 S.Ct. 184, 27 L.Ed. 920."
The United States Supreme Court has apparently not yet specifically ruled upon the precise issue here presented, declaring in McAllister v. Magnolia Petroleum Company, 1958, 357 U.S. 221, 224, 78 S.Ct. 1201, 1203, 2 L.Ed.2d 1272, 1275:
"In the view we take of this case it is unnecessary for us to decide the broad question of whether a state court is free to apply its own statutes of limitation to an admiralty right of action for which no special limitation is prescribed, or whether it is bound to determine the timeliness of such actions by the admiralty doctrine of laches."
There are, nevertheless, substantial indications of the Federal Supreme Court's eventual ruling on the point, including its ruling on a similar issue in McAllister itself, that:
"The result (of applying a state limitation statute to a General Maritime personal injury claim by a seaman incorporating also a claim under the Jones Act) falls short of affording seamen `the full benefit of federal law,' Garrett v. Moore-McCormack Company, 317 U.S. 239, 243, 63 S.Ct. 246, 250, 87 L.Ed. 239, 242, to which they are entitled when state courts undertake to adjudicate claims under the federal maritime law." (357 U.S. 221, 226, 78 S.Ct. 1201, 1204, 2 L.Ed.2d 1272, 1277.)
In Flowers v. Savannah Machine and Foundry Company, (5th Cir., 1962), 310 F. 2d 135, the Fifth Circuit declared that it was deciding the appropriate limitation period to be applied in determining laches in a suit "for maritime injuries caused by negligence or unseaworthiness or both." (At p. 136, emphasis added.) Thus, the ruling in Flowers covers the limitation period for maritime injuries caused by the negligence *787 of a non-employer defendant, as well as for maritime injuries involving an alleged breach of the warranty of seaworthiness.
Defendant-appellees have attempted to distinguish the ruling in Flowers from their position herein on the ground that they are non-employers who were not subject to the warranty of seaworthiness. However, while the attempted distinction might have some merit with regard to the question of unseaworthiness involved in Flowers, it is not appropriate with regard to the claim based on negligence of the defendant in Flowers, as these defendants are in the same position as was the defendant in Flowers with regard to the claim based on negligence under the General Maritime Law.
The plaintiff in Flowers filed the maritime personal injury suit in a federal district court in Georgia based upon an alleged accident which had occurred more than two years but less than three years prior to the filing of the suit. The trial court rejected the contention that the most appropriate analogy for application of the doctrine of laches was the three year period under the Jones Act and adopted, instead, Georgia's two year statute of limitations as being the analogous statutory limitation period to be used as a reference guide in determining whether there was a presumption for or against laches. It dismissed the suit on the basis of the Georgia statute and the presumption resulting from it.
On appeal, the Fifth Circuit reversed, holding that the analogous reference guide for application of the presumption with regard to laches was the Jones Act three year period.
Insofar as the Fifth Circuit is concerned, then, the question whether a State limitation statute or the Jones Act is the appropriate reference guide for the application of a presumption for or against laches in a maritime personal injury suit against a non-employer defendant based upon unseaworthiness or negligence, has been answered in favor of the Jones Act.
In Daws v. Movible Offshore, Inc. (E.D. La., 1967), 264 F.Supp. 764, the plaintiff sought recovery of personal injury damages from a defendant who was neither plaintiff's employer nor a shipowner, being the manufacturer of a crane being used in the drilling operations.
In Daws, the manufacturer of the crane which was claimed to have caused plaintiff's injury while plaintiff was working on an offshore drilling barge urged that the plaintiff's suit against it was barred by laches, as the analogous limitation statute of reference in determining whether there was a presumption for or against laches was the Louisiana prescription of one year for tort actions, which had expired before filing of suit. The suit against the crane manufacturer had been filed two years and two months after the date of the accident. In asserting that Louisiana Civil Code Article 3536 should be the statute of reference instead of the Jones Act, the defendant attempted to distinguish the ruling in Flowers, supra, and other cases following Flowers, on the ground that the suit against it was not one of unseaworthiness against a vessel owner by a seaman, the same distinction asserted by appellees.
The Court denied the defendants' Motion to Dismiss for laches, holding that the Jones Act three year period was the analogous statute of reference.
In Giddens v. Isbrandtsen Company, Inc. (4th Cir., 1966), 355 F.2d 125, the Court reversed a decision holding that laches as a bar to recovery of damages for a personal injury resulting from a maritime tort occurring on Virginia waters should be determined largely by reference to the Virginia two year statute of limitation.
Citing the Fifth Circuit decision in Flowers, supra, and conceding that some courts have preferred state limitation laws as exampling standards of guidance, the Fourth Circuit in Giddens declared:
"On the other hand, the limitation in the Jones Act3 yearsis a more logical and acceptable polestar. It relates to personal *788 injuries on navigable waters. Presumably it was adopted with seamen's circumstances in mind. On the other hand, the State statute comprehends many other and more varied concerns, landside rather than offshore. Also, the Jones Act is of national application, thus providing a uniform criterion wherever in the United States maritime responsibilities are to be enforced. Force is lent to this argument by recalling that the 3 years fixed in the Federal statute represents the consensus of Congress, the final authority on remedies in admiralty, as to what is a fair opportunity for suit.
The Jones Act as furnishing a parallel to help courts in deciding an issue of laches in a longshoreman's suit against a shipowner has been recognized and adopted by the Fifth Circuit. Flowers v. Savannah Machine and Foundry Company, 310 F.2d 135, 137 (5th Cir., 1962)." (355 F.2d 125, 127.)
Although the Court in Larios v. Victory Carriers, Inc. (2nd Cir., 1963), 316 F.2d 63, acknowledges that a State statute of limitation might have some pertinence on the overall picture of laches, it points out that:
"Since Larios' claim, against Victory Carriers and Onassis Corp. (the operator and owner, respectively, of the vessel which collided with plaintiff's vessel) was for an injury on the high seas, the applicable principle with respect to the effect of his delay in bringing suit is laches and not the statute of limitations. This is so whether his suit against these defendants be treated as a libel in admiralty, The Key City, 14 Wall. (81 U.S.) 653, 20 L.Ed. 896 (1872); Gardner v. Panama Railroad Co., 342 U.S. 29, 72 S. Ct. 12, 96 L.Ed. 31 (1951); Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533-534, 76 S.Ct. 946, 100 L.Ed. 1387 (1956), or as an action on the `law side' of the Federal court based on diverse citizenship under the saving clause, 28 U.S.C. Sec. 1333(1), as we expressly held in Oroz v. American President Lines, Ltd., 259 F.2d 636 (2nd Cir., 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed. 2d 572 (1959). Indeed, it would also be true if the suit against Victory Carriers and Onassis Corp. had been brought in a state court under the saving clause. For it is now clear that the maritime law controls all `substantive' issues in the disposition of maritime claims regardless of the form or forum of suit. See Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-411, 74 S.Ct. 202, 98 L.Ed. 143 (1953); and see as to the `substantive' character of rules relating to limitations, Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)." (At p. 65.)
Consideration of the cases cited by appellees does not impel us to the conclusion that we should impose Louisiana's one year prescriptive statute.
As stated in Daws, supra, the cases of Fidelity & Casualty Co. of New York v. C/B Mr. Kim (5th Cir., 1965), 345 F.2d 45, and Pure Oil Co. v. Snipes (5th Cir., 1961), 293 F.2d 60, do not detract from the Fifth Circuit's ruling in Flowers v. Savannah Machine and Foundry Co. (5th Cir., 1962), 310 F.2d 135, discussed supra:
"It is to be noted that the Snipes case was decided prior to the decision in Flowers v. Savannah Machine and Foundry Company, 310 F.2d 135 (5th Cir., 1962), which brought forth the rule that the Jones Act was the analogous statute of reference for determining laches. The Court, in the Mr. Kim case, did speak of the Louisiana prescriptive period but only to point out that though the state Workmen's Compensation Statute was involved, due to the fact that the suit was in admiralty the state prescriptive period did not govern the action, but rather that *789 delay was to be determined according to the maritime doctrine of laches. 345 F.2d 45, 50. Nowhere in the Mr. Kim case did the court speak of laches being determined with reference to the Louisiana prescriptive statute." (264 F.Supp. 764, 766.)
Kozan v. Comstock (5th Cir., 1959), 270 F.2d 839, aside from also being earlier than Flowers, supra, concerns itself with the Louisiana conflict of laws rule under diversity of citizenship jurisdiction in a landside medical malpractice suit arising in Indiana. While the court there held that the general conflict of laws rule applied in favor of the Louisiana prescription, the situation there presented is not at all analogous to the case at hand.
In West African Steamship Company v. McAllister Brothers, Inc. (S.D.N.Y., 1968), 287 F.Supp. 102, the suit involved a property damage claim by one steamship company against another arising out of a collision of their respective vessels. The federal district court there referred to New York's three year limitation period for property damage suits as their reference guide in connection with the defense of laches. Aside from involving property damage instead of an admiralty personal injury, it made no difference in West African whether it was the New York three year limitation for property damage suits or the Jones Act three year period (not mentioned in the decision) which was used as the reference guide.
The same is true of the decision of the Appellate Division of the Supreme Court of New York in Johnsen v. McAllister Lighterage Lines, Inc., 8 A.D.2d 831, 190 N.Y.S. 2d 117, as New York's statute of limitations for personal injury damages based on negligence provides the same three years that the Jones Act provides, and nowhere in the decision is there a discussion of the issue presented here.
Although there are cases involving the maritime doctrine of laches which have, in one way or another, referred to the state limitation laws as guides, we have found no cases, and we are cited to none, which would require the imposition of LSA-C.C. Article 3536.
None of the Louisiana cases cited by defendants-appellees bears upon the issue presented here. Each dealt with a specific contractual prescription under the Louisiana Civil Code of 1825. In Pitkin v. Rousseau & Jeaufreau, 1859, 14 La.Ann. 511, the Court held that a suit for the value of property shipped by vessel and not delivered was prescribed by the one year prescription of Articles 3501 and 3502 of Louisiana Civil Code of 1825.[21] In Martin v. Bryan, 1857, 12 La.Ann. 722, the Court held that the one year prescription of Article 3499 of the Louisiana Civil Code of 1825[22] was applicable to a river pilot's suit for wages. In Davis v. Houren, 1845, 10 Rob. 402, the Court held that under the circumstances presented in a suit for the value of wood sold and delivered for the use of a boat, the one year prescription of Article 3499 of the Louisiana Civil Code of 1825[23] did not apply but that the ten year prescription of Article 3508[24] covered the contractual prescription. In Millaudon v. Martin, 6 Rob. 534, it was held that the one year prescription of Article 3499 of the Louisiana *790 Civil Code of 1825[25] was applicable to a suit for wages by an officer of a vessel. The facts and rulings of those cases are not applicable here.
CONCLUSION
In this case we sit as a court of admiralty and maritime jurisdiction under the "saving" clause. Considering the goal of uniformity in maritime litigation asserted by all courts, coupled with Louisiana's special interest in admiralty matters, as well as the authorities discussed above which, if not absolutely binding, are at least persuasive, and logic itself, we are led to our conclusion herein.
We hold that the maritime doctrine of laches applies in this suit for personal injury damages under the General Maritime Law. We further hold that the three year limitation period of the Jones Act is the analogous provision and is therefore to be used as the reference guide in determining the question of laches.
As plaintiff's suit against all defendants was filed within the three year period, it is not necessary for us to consider plaintiff's further argument that defendants-appellees have not claimed prejudice from the filing of the suit later than one year after the accident.[26]
For the foregoing reasons the judgment of the trial court is hereby reversed. The case is remanded to the trial court for proceedings consistent therewith. Costs of this appeal charged to appellees.
Reversed and remanded.
HOOD, Judge (dissenting).
Eight defendants were named in this suit. The trial judge concluded that the action was barred as to five of them by prescription of one year, as provided in LSA-C.C. art. 3536. The issue presented on this appeal is whether the trial judge erred in applying the state prescriptive law insofar as this action was directed against those defendants.
As to the five defendants who are before the court here, this is strictly an action for damages under the general maritime law, based on negligence. The cause of action arose in inland waters, within the State of Louisiana. The suit has been instituted in a state court, and as to those five defendants it has not been coupled with a claim under the Jones Act or any other federal statute. The majority has held that the federal maritime doctrine of laches, rather than the state laws of prescription, applies to the action which was instituted against these five defendants. I respectfully disagree.
The conflict of laws principle is well established that the procedural law of the forum governs. That is, in matters of procedure every case must be governed by the law of the place where the remedy is sought. Central Vermont Railway Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433. See also 16 Am.Jur.2d, Conflict of Laws, Section 76; 15A C.J.S. Conflict of Laws 22(1); Restatement of the Law, American Law Institute, Conflict of Laws, Sections 586 and 603; Leflar, American Conflicts Law (2d Ed. 1968), Sections 121-127; and cases cited therein.
The applicable Louisiana prescription statute, LSA-C.C. art. 3536, is procedural. It bars the remedy, but it does not extinguish the right. Fidelity & Casualty Co. of New York v. C/B Mr. Kim, 345 F.2d 45 (5th Cir. 1965); Succession of Harz, 181 So.2d 272 (La.App. 4th Cir. 1965); *791 Mallard v. State, 194 So. 447 (La.App. 2d Cir. 1940).
With reference to that article of the Civil Code, the Fifth Circuit Court of Appeals said in Fidelity & Casualty Company of New York v. C/B Mr. Kim, supra:
"For we have held that Art. 3536 is a procedural restraint which bars the remedy, but does not extinguish the right. Page v. Cameron Iron Works, Inc., 5 Cir., 1958, 259 F.2d 420, 422. It is also good Louisiana law, so we have held in an opinion written for the Court by Judge Wisdom that the codal `[A]rticle expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.' Kozan v. Comstock, 5 Cir., 1959, 270 F.2d 839, 841, 80 A.L.R.2d 310."
In Beyer Transportation Co. v. Whiteman Contracting Co., 187 So. 143 (La.App. Orl. Cir. 1939), a maritime action, the plaintiff was given the opinion, through the "saving to suiters" clause (Sec. 28 U.S.C.A. § 1333), either to institute a separate action in a federal court under its admiralty jurisdiction or to reconvene for damages in a state court proceeding. The court held: "When it was presented in the state court it became subjected to the state statutes governing prescription since prescription is a matter controlled by the law of the forum."
In Newman v. Eldridge, 107 La. 315, 31 So. 688 (1902), our Supreme Court said, "It is well settled that the rules of prescription to be applied in any given case are those established by the law of the forum."
And, Article 3532 of the Louisiana Civil Code provides:
"The prescription provided by the laws of this state applies to an obligation arising under the laws of the another jurisdiction which is sought to be enforced in this state."
Since the procedural law of the forum governs, and the Louisiana prescription statute is procedural in nature, I think the trial court correctly applied the law of the forum in determining the procedural issue which is presented here.
I am aware of the fact that there is a well recognized exception to the general rule that the forum law of limitations governs. This exception, briefly stated, is that when the right sought to be enforced is created by statute, and that statute specifies a limited period of time within which that right exists, after which time the right is extinguished or ceases to exist, then the specification of such a peremptive period is regarded as being substantive law, rather than procedural, and it will prevail over the law of the forum.
The general rule and the exception to it is set out, correctly I think, in Leflar, American Conflicts Law (2d Ed. 1968), Section 127, as follows:
"By the great weight of authority, most statutes of limitation are deemed procedural rather than substantive. This is particularly true of the forum state's own statutes. Suit on an extra-state cause of action cannot be maintained if the period of the local statute has run, even though the cause of action is not barred by the statute of the state under whose law it arose."
"There is one well-settled exception to the general rule that forum law governs statutes of limitation. When a statute which creates a right specifies that the existence of its new creation shall continue only for a limited length of time, there is no existent right beyond what the statute has created, and no other state, even though its statute would allow a longer period for such suits, will entertain an action on a right which has ceased to exist."
*792 In Kenney v. Trinidad Corporation, 349 F.2d 832 (5th Cir. 1965), the Fifth Circuit Court of Appeals said:
"Louisiana courts, and courts generally, distinguish between a period of limitation that is prescriptive and therefore procedural and one that is peremptive, a condition of the right, and therefore substantive."
And, in Kozan v. Comstock, supra, the same court held:
"Article 13 of the Louisiana Code of Practice provides: `The forms, the effects, and the prescription of actions, are governed by the law of the place where they are brought * * *' This article expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.
"The principle that the prescriptive law of the forum governs is not without exceptions. If a foreign statute of limitations not only bars the remedy but extinguishes the substantive right as well, then the forum will apply the limitation period of the foreign jurisdiction."
In the instant suit, however, there is no federal statute creating a right such as the one which plaintiff seeks to enforce against the five defendants who are before this court. There is no federal statute which limits the time within which such a right exists, or which extinguishes the right in any way. There is no basis at all, therefore, for concluding that this case can be excepted from the general rule that the procedural law of the forum governs.
The majority does not, and it cannot, hold that this case comes within the only recognized exception to the above mentioned general rule. They have concluded, however, that the federal doctrine of laches must be applied by a state court, not because of any federal substantive law on the subject, but merely to achieve a "goal of uniformity" in maritime litigation. This is a new rule which has never before been recognized by our courts, and I believe it is one which should be left up to Congress or to our state legislature.
My colleagues, while conceding that the United States Supreme Court has not yet specifically ruled on the issue, state that there are "substantial indications" that the Federal Supreme Court eventually will rule that the federal doctrine of laches, rather than state prescription laws, must be applied in suits of this nature filed in state courts. They cite several cases which they feel give such an indication. These include Flowers v. Savannah Machine and Foundry Company (5th Cir. 1962), 310 F.2d 135; Daws v. Movible Offshore, Inc. (E.D. La., 1967), 264 F.Supp. 764; Giddens v. Isbrandtsen Company, Inc. (4th Cir. 1966), 355 F.2d 125; Larios v. Victory Carriers, Inc. (2nd Cir. 1963), 316 F.2d 63; Fidelity & Casualty Co. of New York v. C/B Mr. Kim (5th Cir. 1965), 345 F.2d 45; and Pure Oil Co. v. Snipes (5th Cir. 1961), 293 F.2d 60.
All of those cases were instituted in federal courts, however, and thus the issue was not presented as to whether the state laws of prescription should be applied in a maritime suit filed in a state court. The federal doctrine of laches was applicable in each of those cases because it was the procedural law of the forum. In several of those cases the state prescriptive laws were considered, but they were referred to only to determine whether they were analogous and thus whether the same periods of limitation provided in the state statutes should be used in applying the federal doctrine of laches.
When an action based on a state law is instituted in a federal court, the federal court goes through the same process that I suggest we should employ here. The federal court first determines whether the state statute of limitation is prescriptive or peremptive in nature, and thus whether it is *793 procedural or substantive. If the state statute is held to be peremptive, that is, if it destroys or extinguishes the right of action after the lapse of a certain period of time, then the state law must be considered as being substantive in nature, and it will be applied by the federal court to defeat the action. On the other hand, if the state law is found to be remedial or procedural, that is, if it merely limits the time within which the cause of action may be asserted, then the federal court will apply its own doctrine of laches, that being the procedural law of the forum. See Kenney v. Trinidad Corp., supra, and cases cited therein.
In my opinion, the federal doctrine of laches which my colleagues feel should be applied here does not extinguish or destroy plaintiff's right of action, and thus it is not peremptive and substantive in nature. That doctrine of laches, like our state statute of prescription, is remedial or procedural in nature, since it merely limits the time within which the cause of action may be asserted. Since both the federal doctrine of laches and the state prescription law are procedural, I think the trial court correctly applied the state law, that being the law of the forum.
It is immaterial, I think, that as to three of the defendants (who are not before us on this appeal), plaintiff has coupled its federal maritime action for damages with a claim under the Jones Act. The five defendants who are before us now were not employers of the plaintiff, and the action for damages which has been instituted against them has not been coupled with a claim under any federal statute. I do not believe that plaintiff can subject these five defendants to the federal doctrine of laches by simply joining these other parties as additional defendants, and asserting a claim under the Jones Act as to those additional parties.
LSA-C.C. art. 3536 provides that actions for damages resulting from offenses or quasi offenses are prescribed by one year. This suit was instituted more than two years after the alleged cause of action arose. I think this article of the civil code applies, and that plaintiff is barred by the Louisiana law of prescription from maintaining the action against these five defendants.
In my opinion the judgment of the trial court is correct and should be affirmed. I respectfully dissent therefore from the opinion rendered by the majority.

ON APPLICATION FOR REHEARING
En Banc.
MILLER, Judge.
We granted this rehearing to review our decision that the maritime doctrine of laches applied to an action for damages under the general maritime law, based on negligence, and filed in the State court; and that the three year limitation period of the Jones Act is the analogous provision to be used as the reference guide to determine the question of laches.
On rehearing, a majority of this court is of the opinion that the trial court correctly applied the one year prescriptive period provided in LSA-C.C. Article 3536.
Plaintiff appealed the trial court's judgment sustaining exceptions of prescription filed by five of eight defendants.
Plaintiff, John Istre, filed suit seeking recovery for personal injury damages allegedly resulting from an accident which occurred on or about November 29, 1965, while he was working as a member of the crew of a submersible drilling barge situated in navigable waters in St. Mary Parish, Louisiana.
Plaintiff named the following defendants, whose participation in the activities giving rise to the accident sued upon, insofar *794 as is pertinent herein, are claimed to be as follows:
Kilroy Drilling and Production Company plaintiff's employer and owner of the drilling barge;
St. Paul Marine and Fire Insurance CompanyKilroy's insurer;
Diamond M. Drilling Companythe successor of Kilroy;
Dia-Log Companythe supplier of equipment and personnel for a "fishing tool operation" being conducted aboard the drilling barge at the time of the accident;
Travelers Insurance CompanyDia-Log's insurer;
Wilson Supply Companythe furnisher of personnel for the operation;
American General Insurance Company Wilson's insurer;
Southern Natural Gas Companythe owner of the lease and well at the site of the accident.
The suit against Kilroy, as employer, and its successor, Diamond M., states a cause of action for negligence under the Jones Act (46 U.S.C. § 688), and for breach of the warranty of seaworthiness under the general maritime law. These parties are not before us except by amicus curiae brief in which these three defendants join plaintiff in seeking to have the doctrine of laches applied to this case. It is conceded that plaintiff's suit was timely filed as against these three defendants, even though the suit was filed in the state court.
As to the remaining five defendants, plaintiff concedes that they are neither his employers nor the owners of the barge and that therefore his suit against them is based solely upon negligence.
The suit against all defendants was filed in the Sixteenth Judicial District Court for the Parish of Iberia on December 21, 1967, more than two years after the date of the alleged accident. It is conceded by the five defendants-appellees that had plaintiff filed this suit in the federal court, the doctrine of laches would apply. The cases cited by plaintiff and relied upon in our original opinion were filed in the federal forum and are distinguished on this basis.
But plaintiff chose the State forum. Plaintiff may have preferred some procedural advantages afforded in the State court, such as: agreement of only nine of twelve jurors needed; ability to call under cross-examination any employee of a party as opposed to the federal rule wherein the right to call witnesses under cross-examination is limited to executive or top supervisory personnel; no procedural vehicle provided for directed verdict or judgment n. o. v. in State court; or shorter delay in State court between filing petition and trial. Having chosen the State forum, he is bound by State procedural rules. The argument that uniformity requires us to import the Federal procedural law of laches rather than use the Louisiana procedural law of prescription, is unacceptable. If we adopt the federal procedural rule in this instance, it would logically follow that more Louisiana procedural rules will, for the same reason, be abandoned in the future. We hold that our State courts are bound to apply State procedural rules.
The conflict of laws principle is well established that the procedural law of the forum governs. That is, in matters of procedure every case must be governed by the law of the place where the remedy is sought. Central Vermont Railway Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433. See also 16 Am.Jur.2d, Conflict of Laws, Section 76; 15A C.J.S., Conflict of Laws 22(1); Restatement of the Law, American Law Institute, Conflict of Laws, Sections 586 and 603; Leflar, American Conflicts Law (2d Ed. 1968), Sections 121-127; and cases cited therein.
The applicable Louisiana prescription statute, LSA-C.C. Art. 3536, is procedural. *795 It bars the remedy, but it does not extinguish the right. Fidelity & Casualty Co. of New York v. C/B Mr. Kim, 345 F.2d 45 (5th Cir. 1965); Succession of Harz, 181 So.2d 272 (La.App. 4th Cir. 1965); Mallard v. State, 194 So. 447 (La. App.2d Cir. 1940).
With reference to that article of the Civil Code, the Fifth Circuit Court of Appeals said in Fidelity & Casualty Company of New York v. C/B Mr. Kim, supra:
"For we have held that Art. 3536 is a procedural restraint which bars the remedy, but does not extinguish the right. Page v. Cameron Iron Works, Inc., 5 Cir., 1958, 259 F.2d 420, 422. It is also good Louisiana law, so we have held in an opinion written for the Court by Judge Wisdom that the codal `[A]rticle expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.' Kozan v. Comstock, 5 Cir., 1959, 270 F.2d 839, 841, 80 A.L.R. 2d 310."
In Beyer Transportation Co. v. Whiteman Contracting Co., 187 So. 143 (La.App. Orl. Cir. 1939), a maritime action, the plaintiff was given the option, through the "saving to suiters" clause (Sec. 28 U.S. C.A. § 1333), either to institute a separate action in a federal court under its admiralty jurisdiction or to reconvene for damages in a state court proceeding. The court held: "When it was presented in the state court it became subjected to the state statutes governing prescription since prescription is a matter controlled by the law of the forum."
In Newman v. Eldridge, 107 La. 315, 31 So. 688 (1902), our Supreme Court said, "It is well settled that the rules of prescription to be applied in any given case are those established by the law of the forum."
And, Article 3532 of the Louisiana Civil Code provides:
"The prescription provided by the laws of this state applies to an obligation arising under the laws of another jurisdiction which is sought to be enforced in this state."
Since the procedural law of the forum governs, and the Louisiana prescription statute is procedural in nature, we think the trial court correctly applied the law of the forum in determining the procedural issue here presented.
We are aware of the fact that there is a well recognized exception to the general rule that the forum law of limitations governs. This exception, briefly stated, is that when the right sought to be enforced is created by statute, and that statute specifies a limited period of time within which that right exists, after which time the right is extinguished or ceases to exist, then the specification of such a peremptive period is regarded as being substantive law, rather than procedural, and it will prevail over the law of the forum.
The general rule and the exception to it is set out, correctly we think, in Leflar, American Conflicts Law (2d Ed. 1968), Section 127, as follows:
"By the great weight of authority, most statutes of limitation are deemed procedural rather than substantive. This is particularly true of the forum state's own statutes. Suit on an extra-state cause of action cannot be maintained if the period of the local statute has run, even though the cause of action is not barred by the statute of the state under whose law it arose."
"There is one well-settled exception to the general rule that forum law governs statutes of limitation. When a statute which creates a right specifies that the existence of its new creation shall continue only for a limited length of time, there is no existent right beyond what the statute has created, and no other state, even though its statute would allow a longer period for such suits, *796 will entertain an action on a right which has ceased to exist."
In Kenney v. Trinidad Corporation, 349 F.2d 832 (5th Cir. 1965), the Fifth Circuit Court of Appeals said:
"Louisiana courts, and courts generally, distinguish between a period of limitation that is prescriptive and therefore procedural and one that is peremptive, a condition of the right, and therefore substantive."
And, in Kozan v. Comstock, 270 F.2d 839, 80 A.L.R.2d 310 (5th Cir. 1959), the same court held:
"Article 13 of the Louisiana Code of Practice provides: `The forms, the effects, and the prescription of actions, are governed by the law of the place where they are brought * * *' This article expresses the general rule, supported by ample Louisiana authority, that prescription is procedural and the law of the forum governs.
"The principle that the prescriptive law of the forum governs is not without exceptions. If a foreign statute of limitations not only bars the remedy but extinguishes the substantive right as well, then the forum will apply the limitation period of the foreign jurisdiction."
In the instant suit, however, there is no federal statute creating a right such as the one plaintiff seeks to enforce against the five defendants before this court. There is no federal statute which limits the time within which such a right exists, or which extinguishes the right in any way. There is no basis at all, therefore, for concluding that this case can be excepted from the general rule that the procedural law of the forum governs.
It is not contended that this case comes within the only recognized exception to the above mentioned general rule. Instead, it is argued that the federal doctrine of laches must be applied by a state court, not because of any federal substantive law on the subject, but merely to achieve a "goal of uniformity" in maritime litigation. This is a new rule never before recognized by our courts, and we believe it is one which should be left to Congress or to our state legislature.
We cannot apply to this case the rules fashioned by the U. S. Supreme Court relating to the sui generis situation of the federal diversity court. The specific purpose of a diversity court as expressed by the U. S. Supreme Court in Guaranty Trust v. York, 326 U.S. 99, at 108, 65 S.Ct. 1464, at 1469, 89 L.Ed. 2079, at 2086, was to make the federal court "another court of the State" in which it was sitting. A diversity court, by definition, sits solely as a court deciding cases arising under the laws of a State. There were compelling reasons to fashion peculiar rules for such a court whose sole function was to hear cases arising under state law and avoid discrimination to non-residents.
We have found no authority and none has been cited to us which would support the proposition that the Erie Doctrine is applicable to non-diversity cases. A discussion of this problem is found in the case of D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956.
There, FDIC, an agency of the federal government, instituted suit against the maker of a note which had been given to a bank insured by FDIC. Jurisdiction in federal district court was based upon a federal statute giving the federal agency right to seek redress in the federal court system. One of the legal questions was whether the note was an Illinois or a Missouri contract. It was conceded that the Erie Doctrine (as supplemented by Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477) clearly required a diversity court to follow the forum state's conflict of law rules. The question insofar as it relates to the problem herein was whether Klaxon applied to this non-diversity case. The majority opinion by Justice Douglas avoided the question, but in a *797 concurring opinion by Mr. Justice Jackson at 315 U.S. 467, 62 S.Ct. 683-684, 86 L.Ed. 967, we find:
"The court has not extended the doctrine of Erie R. Co. v. Tompkins [304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] beyond diversity cases.
This case is not entertained by the federal courts because of diversity of citizenship. It is here because a federal agency brings the action, * * *."
This is additional authority for finding that we do not sit as a court of admiralty and maritime jurisdiction under the "saving" clause. Furthermore, we have found no authority for the proposition that a state court trying maritime causes of action under the "saving" clause sits as an admiralty court.
We gather that the intention of Congress in the Enabling Act was to "save" litigant's common law remedy in areas where the common law had theretofore been competent to give relief. It was the intention of Congress to allow litigants such common law remedies as a jury trial which was then unavailable in the admiralty court. See Norris, The Law of Seamen (2nd Ed.) Section 23 at page 36:
"The common law remedy saved to suitors is the right to proceed in personam against the defendant wherever the common law is competent to give a remedy. In these classes of cases can be found suits for breach of charter, seamen's suits for wages, etc., where jurisdiction of the person of the defendant can be obtained. In such cases the jurisdiction is concurrent and the action may be brought in either the admiralty or common law courts.
Stated another way, one who holds an in personam claim enforceable by a libel in personam in admiralty, can bring suit at his election in a common law court provided that the jurisdiction requirements of the latter court are met and the remedy sought is one in which the common law court had concurrent jurisdiction with admiralty at the time of the adoption of the Constitution."
See also Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, at 129, 130, 44 S.Ct. 274, at 279, 68 L.Ed. 582, at 589.
"Knapp, Stout & Co. v. McCaffrey [177 U.S. 638, 644, 20 S.Ct. 824, 44 L.Ed. 921] 177 U.S. 648, 20 S.Ct. 829, 44 L.Ed. 921, clearly affirms that the thing saved to suitors is the right of a common law remedy. `The true distinction between such proceedings as are and such as are not invasions of the exclusive admiralty jurisdiction is this: If the cause of action be one cognizable in admiralty, and the suit be in rem against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, or if the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute (Sec. 563) of a common-law remedy. The suit in this case being one in equity to enforce a common-law remedy, the state courts were correct in assuming jurisdiction.'"
The instant case is not the "converse" situation to a federal diversity case as contended by plaintiff-appellant.
The cases of Pitkin v. Rousseau & Jeaufreau, 1859, 14 La.Ann. 511, 517; Martin v. Bryan, 1857, 12 La.Ann. 722; Davis v. Houren, 1845, 10 Rob. 402; Millaudon v. Martin, 1844, 6 Rob. 534; and Beyer Transportation Co., Inc. v. Whiteman Contracting Co., Inc., 187 So. 143 (La.App.Orl. Cir. 1939), all applied the Louisiana statutes on prescription.
On the narrow issue presented, that is, does Louisiana prescription or federal *798 laches apply to a case filed in state court under the general maritime law, these cases are in point and are controlling. In each of these cases, the Louisiana appellate courts applied the Louisiana prescriptive period rather than the doctrine of laches. The trial court correctly, we think, followed these cases.
Plaintiff-appellant substantially relies on maritime cases, particularly Flowers v. Savannah Mach. & Laundry Co., 310 F.2d 135 (5th Cir. 1962), which were filed in a federal forum. These cases stand for a proposition readily concededin a federal forum, the doctrine of laches rather than state prescriptive statutes will be applied to cases arising under the general maritime law. These cases simply do not consider the question of which rule of time limitation should be applied by a state forum. The question presented by this appeal (whether laches or prescription applies) was not before the federal courts. The only question for decision was what is the proper statute of reference.
It is entirely proper and completely consistent with this holding that the federal forum will apply its own procedural rules, including time limitations, to a maritime cause of action. In this connection, we note that the five defendants-appellees have never attempted to distinguish Flowers and other similar cases on the ground "that these defendants are non-employers who were not subject to the warranty of seaworthiness." These cases applied the law of the forum just as we are applying the law of the forum.
Three years after handing down the Flowers decision, the U. S. Court of Appeals, Fifth Circuit, held that laches was applicable to a suit filed in federal district court under the general maritime law. The court, after stating that prescription was procedural and governed by the law of the forum, stated:
"That being so, the forum here is the Federal District Court in which the equitable doctrine of laches, not prescription, is controlling to a maritime claim."
Fidelity & Casualty Company of New York v. C/B Mr. Kim (5th Cir. 1965), 345 F.2d 45, at 50. This supports our analysis that the federal cases are distinguishable on the basis that these courts applied their own procedural rules.
An annotation at 91 A.L.R.2d 1417, 1427 is cited as authority for holding that laches should be applied to maritime causes of action regardless of whether the suit is brought in a federal or state court, citing Curbelo v. Matson Navigation Co., 194 Cal. App.2d 305, 14 Cal.Rptr. 913. We do not find this case to be authority for that statement.
In Curbelo, plaintiff instituted action against his employer for negligence under the Jones Act and for unseaworthiness under the general maritime law. The court held, consistent with the U. S. Supreme Court decision in McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272, that the Jones Act three year statute of limitation governed plaintiff's action against his employer for both negligence and unseaworthiness. No one has here questioned the applicability of the three year Jones Act prescriptive period to a suit by a seaman against him employer. Indeed, three defendants in this litigation did not claim prescription for this very reason.
Our brothers of the Court of Appeal, First Circuit, have only recently decided two cases which we have considered.
In American Auto. Ins. Co. v. Twenty Grand Towing Co., 225 So.2d 114 (La.App. 1st Cir. 1969) it was held that the contract sued upon was maritime in nature and therefore the controversy must be determined pursuant to the laws of admiralty; that the issue of prescription must be adjudicated in the light of the federal doctrine of laches. However, all cases discussed in support of this conclusion were cases which arose in the federal courts.
*799 These cases are authority for and binding on federal courts for cases filed in federal courts. None of the Louisiana cases which we find in point, were discussed or distinguished.
In H & H Boat Rental, Inc. v. Vidos, 225 So.2d 308 (La.App. 1st Cir. 1969) the court concluded that it was dealing with a maritime tort and therefore the doctrine of laches rather than prescription was to be applied. Again, the only cases cited were cases which arose in the federal courts, excepting the Twenty Grand case hereinabove discussed.
Since plaintiff chose the state forum, he is bound by the entire body of Louisiana procedure. The decision of the trial court is reinstated.
Affirmed.
FRUGE, J., dissents and adheres to original opinion by this Court.
TATE, Judge (dissenting).
I respectfully dissent from the majority's affirmance of the trial court on rehearing.
In the writer's opinion, our original majority opinion correctly held that the maritime doctrine of laches applies to this suit for personal injury damages under the General Maritime Law, not the one-year prescriptive period of Louisiana tort law; so that the three-year limitation period of the Jones Act is the analogous provision to be used as a guide in determining the question of laches.
Since our original decision of this case, the Court of Appeal for the First Circuit has decided two cases, American Auto. Ins. Co. v. Twenty Grand Towing Co., 225 So.2d 114 (La.App. 1st Cir. 1969), and H & H Boat Rental, Inc. v. Vidos, 225 So.2d 308 (La.App. 1st Cir. 1969), that in maritime actions the doctrine of laches rather than the Louisiana prescriptive provision would apply. The decision rendered by the majority today is in conflict with these decisions of the First Circuit, and the conflict will have to be resolved by the Supreme Court through writs of certiorari, La.Const. Art. 7, Section 11.
None of the cases cited in today's majority opinion as authority for thus applying the Louisiana prescription provision deal with a seaman's attempt to assert a claim for injury under the General Maritime Law, a federal right, in state court.[1]
In light of the construction of the "saving to suitors" clause by the Supreme Court to allow seamen whatever strategic advantages the state forum might afford, Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Gilmore and Black, The Law of Admiralty, Sections 6-59 (1957), today's action limiting the right to recovery of one of the federal courts *800 favorite wards seems destined for a brief life.
Today's majority states that La.C.C. Art. 3536 merely bars the remedy, but it does not extinguish the right, so that it is merely procedural. The majority therefore applies the Louisiana provision, while admitting that had this action been brought in a federal forum, the doctrine of laches would have been applied, the Jones Act three-year period adopted as the analogous statute, and the contrary result reached.
"A right for which the legal remedy is barred is not much of a right." Leflar, American Conflicts Law 304 (Rev. ed. 1968). To allow the choice of a courtroom to cause the loss of right based on federal maritime law seems inconsistent with the philosophy expressed in the Erie-Guaranty Trust doctrine, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231 (1945); Erie RR Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), whether that doctrine is to be restricted to diversity cases or not. Admiralty, like actions based on commercial paper issued by the federal government, Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), is an area governed by federal law. The clear thrust of all of these decisions is that litigation based on state-law or upon federal-right should reach the same result, whether brought in a state or federal court.
Today we apply a state prescriptive statute to deprive a seaman of the benefit of the longer delay allowed by the federal maritime laches doctrine. We do so on the ground that the former is "procedural" law and thus applicable in state court, despite its defeat of substantive rights available to the seaman had he brought suit in federal court a few blocks or a few miles away. Yet it is now settled that the Louisiana procedural provision permitting an appellate court full review of jury-found facts on appeal cannot be applied by Louisiana courts in a seaman's suit for personal injuries, where to do so would have the effect of denying the seaman the full benefit of federal law (which accords finality to a jury verdict). Presley v. Upper Mississippi Towing Corp., 141 So.2d 411 (La. App. 1st Cir. 1961), certiorari denied. See also McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). Surely today's result is both conceptually and practically inconsistent with such principle.
The writer therefore respectfully dissents from today's scholarly majority opinion, believing that the equally scholarly original majority opinion by my brother FRUGE more correctly analyzes and applies the pertinent legal principles.
NOTES
[1] Currie, Federalism and Admiralty, The Devil's Own Mess, 1960, The Supreme Court Review 158.
[2] Flowers v. Savannah Machine and Foundry Co. (5th Cir., 1962), 310 F.2d 135, 138.
[3] The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760; Gilmore & Black, The Law of Admiralty, 1957, Chapter VI, Sections 6-1 to 6-6; Norris, The Law of Seamen, 2nd Ed., 1962, Vol. 2, p. 782.
[4] The Osceola; Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Norris, Vol. 2, p. 708.
[5] The Osceola; Norris, Vol. 2, p. 782.
[6] Id., Seas Shipping Co. v. Sieracki.
[7] "For this turn; for this one particular occasion." Black's Law Dictionary.
[8] Id., Seas Shipping Co. v. Sieracki.
[9] Benedict, The Law of American Admiralty (1940).
[10] Ibid.
[11] Larios v. Victory Carriers, Inc. (2nd Cir., 1963), 316 F.2d 63.
[12] Akers v. State Marine Lines, Inc. (5th Cir., 1965), 344 F.2d 217 (a General Maritime personal injury suit filed more than 3 years after the accident).
[13] The Jones Act incorporates the statute of limitations under the Federal Employers' Liability Act, 45 U.S.C. § 56. When the Jones Act was adopted in 1920, the FELA limitation was 2 years, but this was later amended to 3 years, August 11, 1939, 53 Stat. 1404, and the amendment applies to the Jones Act. McAllister, infra, footnote 6 of Opinion.
[14] Baltimore S. S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069.
[15] McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272.
[16] Ibid.
[17] Giddens v. Isbrandtsen Co. (4th Cir., 1966), 355 F.2d 125, 128. (A General Maritime suit filed more than 3 years after the accident).
[18] McAllister v. Magnolia Petroleum Co., 1958, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272; Giddens v. Isbrandtsen Co. (4th Cir., 1966), 355 F.2d 125; Odom v. The S. S. Monarch of the Seas (5th Cir., 1963), 322 F.2d 1022; Larios v. Victory Carriers, Inc. (2nd Cir., 1963) 316 F.2d 63; Flowers v. Savannah Machine and Foundry Co. (5th Cir., 1962), 310 F.2d 135; Pure Oil Co. v. Snipes (5th Cir., 1961), 293 F.2d 60; and the authorities cited in those cases.
[19] Fidelity and Casualty Company of New York v. C/B Mr. Kim (5th Cir., 1965) 345 F.2d 45; Daws v. Movible Offshore, Inc. (E.D.La., 1967), 264 F.Supp. 764; Seals v. States Marine Lines (E.D. La., 1960), 188 F.Supp. 398; Daniels v. States Marine Corporation (E.D.La., 1960), 184 F.Supp. 815; and the general discussion of time limitation in nonstatutory actions for maritime personal injuries in an annotation on the subject at 91 A.L.R.2d 1417.
[20] Fidelity and Casualty Company of New York v. C/B Mr. Kim (5th Cir., 1965), 345 F.2d 45; Kozan v. Comstock (5th Cir., 1959), 270 F.2d 839; West African Steamship Company v. McAllister Brothers, Inc. (S.D.N.Y., 1968) 287 F.Supp. 102; Johnsen v. McAllister Lighterage Lines, Inc., 1959, 8 A.D.2d 831, 190 N.Y.S.2d 117; Pitkin v. Rousseau & Jeaufreau, 1859, 14 La.Ann. 511; Martin v. Bryan, 1857, 12 La.Ann. 722, Davis v. Houren, 1845, 10 Rob. 402; Millaudon v. Martin, 1844, 6 Rob. 534; as well as two prior unreported decisions of the Louisiana District Court for the Parish of Iberia, in which the present case is pending.
[21] The provisions of these articles are now incorporated, though reworded, in Articles 3536 and 3537 of the Civil Code of 1870. In Pitkin, the Court summarized the pertinent provisions of the two 1825 articles to read: "The action for the delivery of merchandise or other effects, shipped on board any kind of vessel, is prescribed by one year from the day of the arrival of the vessel, or that on which she ought to have arrived."
[22] The provisions of this article are now incorporated, though reworded, in Article 3534 of the Civil Code of 1870.
[23] See preceding footnote.
[24] The provisions of this article are now incorporated, though reworded, in Article 3544 of the Civil Code of 1870.
[25] See footnote 22.
[26] As stated in Flowers, supra: "Whether laches exists is ordinarily presented when the delay in filing exceeds the analogous statutory limitation period. We do not undertake to determine whether, or under what circumstances, delay short of the statutory period might properly amount to laches." (Flowers, 310 F.2d 135, 137, footnote 4.)
[1] Central Vermont Ry. Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1915) (death action under Federal Employees Liability Act); Fidelity & Casualty Co. of New York v. C/B Mr. Kim, 345 F.2d 45 (5th Cir. 1965) (insuror exercising subrogation rights under Louisiana statute); Kenney v. Trinidad Corp., 349 F.2d 832 (5th Cir. 1965) (wrongful death action under Louisiana statute); Kozan v. Comstock, 270 F.2d 839, 80 A.L.R.2d 310 (5th Cir. 1959) (malpractice); Page v. Cameron Iron Works, Inc., 259 F.2d 420, 422 (5th Cir. 1958) (airline crash); Newman v. Eldridge, 107 La. 315, 31 So. 688 (1902) (recovery on a note); Pitkin v. Rousseau & Jeaufreau, 14 La.Ann. 511 (1859) (action for nondelivery of merchandise); Martin v. Bryan, 12 La.Ann. 722 (1857) (action for wages); Davis v. Houren, 10 Rob. 402 (1845) (to recover value of wood furnished steamer); Millaudon v. Martin, 6 Rob. 434 (1844) (for collection of an account); Beyer Transp. Co. v. Whiteman Contracting Co., Inc., 187 So. 143 (La.App.Orl.1939) (recovery for towing services); Mallard v. State, 194 So. 447, La.App.2nd Cir. 1940 (highway accident); Succession of Harz, 181 So.2d 272 (La.App.4th Cir. 1965) (succession matter that does not consider La. C.C. Art. 3536).